CALLAGHAN v. DELAWARE, L. & W. R. Co. *et al.*

(*Supreme Court, General Term, Fourth Department.* January, 1889.)

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
In an action against a railroad company for the death of plaintiff's intestate, resulting from an accident at a street crossing, it appeared that plaintiff was driving a wagon in which intestate, his wife, and others were riding. They came near the tracks, and were compelled to await the passing of a train on another road. When it had passed, the gate-keeper raised the gate nearest the wagon, and plaintiff immediately drove on. Though plaintiff testified that he looked for trains, and saw none, there was nothing to prevent him from seeing defendants' train. After driving onto the first track, the further gate not having been raised, plaintiff saw the gate-keeper making signs, which he understood to be an invitation to come on. He saw the train, became excited, and whipped up his horses, and was crossing the tracks, when the wagon was struck by the train, and intestate killed. *Held,* that plaintiff was not necessarily guilty of contributory negligence in driving on the tracks without looking carefully for trains, as he might have relied on the gate-keeper's conduct as an assurance that there was no danger, and that it was error to direct a nonsuit.

Appeal from circuit court, Onondaga county.

Action by Jeremiah Callaghan, administrator, etc., of his deceased wife, to recover damages of the Delaware, Lackawanna & Western Railroad Company and the New York Central & Hudson River Railroad Company, for the death of said intestate, which was occasioned by an accident at a crossing of the tracks of the defendant companies at a street in the city of Syracuse. A nonsuit was directed, and plaintiff appeals.

Argued before WILLIAMS, FOLLETT, and MARTIN, JJ.

*M. E. & G. W. Driscoll,* for appellant. *Marshall & Ruger* and *Hiscock, Doheny & Hiscock,* for respondents.

WILLIAMS, J. The features of this case that attract our attention, and especially require our consideration upon this appeal, are the gates and gate-tender that were present at the accident, their acts and movements. If these elements were absent from the case, we might very readily concur with the trial court in its disposition of it; because, although there are some features aside from these, bearing upon the question of contributory negligence, favorable to the plaintiff,—such as two trains following each other so closely, the smoke from the engine attached to the first train settling down upon the tracks behind the train, and the curve in the tracks as they approached the crossing,—yet it would be difficult, after considering these features, in the

absence of the gates and gate-tender, and their acts and movements, to account for these people being upon the track, in front of this train, consistently with the absence of negligence on their part. Just where the team stood, how near the east gate when the first train passed the crossing, and when the gate-tender began to raise the bars of the east gate, does not appear; but considering that the team moved along slowly towards the tracks, from the place where it had stopped, and that it had reached the New York Central tracks before the east gate was entirely raised, and before the gate-tender had begun to raise the west gate at all, we may conclude the team was standing near the east gate, and within 41 feet of the east track, when the first train passed the crossing. In the absence of gates and a gate-tender, we should say it was the duty of the people in the wagon, after the first train passed by, and before the team was driven upon the tracks, to look out for any other train that might be coming upon the tracks, and, if there was smoke from the first train which obstructed the view, to wait until the smoke cleared away, and the view was unobstructed; and we should say, upon the evidence, if they had so looked, they would have seen the train, and therefore would have been guilty of negligence in going upon the tracks before it had passed by. The question, therefore, is whether the presence of the gates and gate-tender, and the action of the gate-tender in raising the bars of the east gate, so far relieved the persons in the wagon from the duty to look and listen for the approaching train as to make the question of their negligence, under the circumstances, one of fact for the jury.

In *Glushing* v. *Sharp*, 96 N. Y. 676, the plaintiff drove upon the track of the Long Island Railroad Company, in Brooklyn, his team was struck by a passing train, and his horse killed and wagon injured. There were gates and a gate-tender at the crossing. As he approached the track, he saw a train of cars pass, and the gate-tender raise the gates, and go into the gate-house. At the cross-walk, 30 feet before reaching the track, he looked and saw no train. His view was there somewhat obstructed. He did not look again, though the view for the remaining 30 feet of the track was entirely unobstructed, and if he had looked he would have seen the train before driving upon the track. A recovery was had, and was sustained by the court of appeals, the court saying: "The claim of the defendant is that the plaintiff should have been nonsuited on account of his own carelessness, and this claim he bases upon these facts: That at the place where the plaintiff looked, about 30 feet from the railroad track, his view was somewhat obstructed, and that he did not look again while passing the 30 feet, although during that space his view was unobstructed, and he could have seen the train if he had looked. We think the case as to the plaintiff's negligence was properly submitted to the jury. He looked both ways, and whether, under all the circumstances, he should have looked again, or continued to look, was for the jury to determine. The raising of the gate was a substantial assurance to him of safety, just as significant as if the gate-man had beckoned to him, or invited him to come on, and that any prudent man would not be influenced by it, is against all human experience. The conduct of the gate-man cannot be ignored in passing upon plaintiff's conduct, and it was properly to be considered by the jury, with all the other circumstances of the case."

In *Lindeman* v. *Railroad Co.*, 42 Hun, 306, plaintiff's intestate drove a team attached to a coal wagon upon the track of defendant's railroad in the city of Albany, and was killed. There were gates at the crossing, and at the time of the accident they were open. It was in the night, and an unobstructed view of the track could be had for 73 feet before reaching it. The intestate was seen just before reaching the track to look both ways. The engine was backing slowly towards the crossing, having no light before it. There was a nonsuit at circuit, which the general term reversed, holding the question of contributory negligence was for the jury, saying: "The defend-

ant insists the intestate could have seen the engine if he had looked, and was therefore negligent as a matter of law. But he had passed this place before, and therefore knew of the gates. He saw they were not across the road, and, as they were white, he undoubtedly saw them standing upright on each side. As said in *Glushing* v. *Sharp*, 96 N. Y. 676, this was an assurance of safety, just as significant as if a gate-man had beckoned to him or invited him to come on. * * * The opening of the gates is an affirmative act, giving every traveler to know that the crossing is safe. * * * The question of the negligence of the deceased should have gone to the jury." The language quoted above from *Glushing* v. *Sharp* is quoted in full by Judge DANFORTH in *Woodard* v. *Railroad Co.*, 106 N. Y. 390, 13 N. E. Rep. 424. This was a dissenting opinion, but the court divided in the case, four and three.

Applying the rule laid down in these cases to the present case, it seems to me the question of contributory negligence was for the jury, and that the trial court was in error in directing a nonsuit and dismissal of the complaint upon this ground. The object in having these gates and gate-tender was to avoid collisions at this crossing between trains and persons traveling along the street with teams. The duty of the gate-tender was to have his gates down across the road-bed when trains were approaching. He was stationed at a place where he had a favorable view of the tracks, and the people in this wagon had a right to suppose, when the gate-tender raised the east gate, that he intended to raise the west gate immediately after, that no trains were coming, and that teams might safely pass over the tracks at the crossing. Whether they did rely upon this act of the gate-tender, and therefore made a less vigilant use of their eyes than they would otherwise have done, to discover whether a train was coming, and whether they were justified in so doing; whether they failed, under the circumstances, in view of the raising of the east gate by the gate-tender, to exercise such a degree of care and caution as an ordinarily careful and prudent person would have used,—were questions of fact for the jury. The plaintiff testified he did look at various times while approaching the track, but did not discover the train until the team was upon the New York Central tracks. It may be doubted whether he looked very carefully, because, if he did, he should have seen the train before he reached the tracks. The more reasonable conclusion, from all the circumstances, would be that these people, seeing the bars of the east gate going up immediately after the first train passed, supposed the gate-tender was doing his duty, and that he would not raise that gate if there was any train coming, and that they relied upon the safety in crossing the tracks implied by the raising of the gate; that, therefore, without waiting for any smoke to clear away, or to obtain any very clear or satisfactory view of the tracks to the south, they started to cross over. We should hardly be willing to assume they saw the train coming, and from the first supposed they could get over ahead of it, or that the gate-tender saw the train before he raised the east gate. We rather assume that, up to the time the team reached the New York Central tracks, neither the gate-tender nor the people in the wagon had discovered the approaching train; that, when they all discovered it at about the same time, all were frightened and excited, and none of them acted coolly, nor did what would have insured safety to the people in the wagon. The gate-tender could have rushed across the Delaware, Lackawanna & Western track, seized the horses by the bits, and kept them back off the track the train was approaching on. He could have made motions to the people in the wagon to keep back. He did not do either of these things, upon plaintiff's evidence, but stood still, leaving the west gate down so the team could not escape, and yet motioning to the people to come along over the tracks. So, also, the plaintiff might have stopped his team, backed them up, or turned them around, and kept them off the track, or all the people could have jumped from the wagon, and in either contingency no one would have been injured. But, instead of

doing any of these things, plaintiff, obeying the motion of the gate-tender to drive on, or misunderstanding the real motion the gate-tender made, supposing it to be a motion to come on, when in fact it was a motion to keep back, whipped up his horses, and drove directly upon the track the train was approaching on. If the jury found the people in the wagon were free from negligence up to the time they discovered the approaching train, when the team was upon the New York Central tracks, then, when they first discovered the train, they were in a place of danger, brought there by the negligence of the gate-tender, defendants' agent, and it was a question for the jury whether, in attempting to extricate themselves from this danger, being frightened and excited, and not knowing or being able to judge correctly which track the train was upon, they exercised such a degree of care and caution as an ordinarily careful and prudent person would have used. If they did, then they were not negligent, though they entirely failed to so act, in the sudden emergency, as to insure safety. *Sherry* v. *Railroad Co.*, 104 N. Y. 652, 656, 10 N. E. Rep. 128. The judgment should be reversed, and a new trial ordered, with costs to abide event. All concur.