KATE A. SCAGGS, Administratrix, etc., of ELEANOR DOWNING, Deceased, Appellant, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Respondent.

*Raising the gates at a railroad crossing is an assurance of safety — negligence in allowing an engine to stand on a crossing.*

In an action brought to recover damages for injuries sustained by the plaintiff's intestate, resulting in her death, by reason of the defendant's alleged negligence, it was shown that at a point where the defendant's railroad tracks crossed a street in a village, the plaintiff's intestate waited for about twenty minutes, at the end of which time the defendant's servant raised the gates high enough for her to pass through and looked at her. She started to cross the tracks, whereupon the gates were opened wide by the defendant's agent, and a man driving a horse and wagon started to cross the tracks. An engine of the defendant, projecting fifteen feet into the street, automatically blew off steam, making a noise that frightened the horse, which became unmanageable and ran against the plaintiff's intestate, causing injuries resulting in her death.

*Held,* that the raising of the gates by the defendant's servant was an assurance of safety to the plaintiff's intestate, which she was entitled to rely upon.

That the evidence was sufficient to justify the submission to the jury of the question as to the negligence of the defendant.

APPEAL by the plaintiff, Kate A. Scaggs, as administratrix, etc., of Eleanor Downing, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 31st day of December, 1890, upon a dismissal of the plaintiff's complaint at the Saratoga Circuit, and also from the order and decision of the court directing a nonsuit.

*Jesse Stiles* and *J. W. Verbeck,* for the appellant.

*Lewis E. Carr,* for the respondent.

PUTNAM, J. :

This action was brought to recover damages for the death of plaintiff's intestate on August 6, 1887, which, it is alleged, was caused by defendant's negligence.

The accident occurred at the place where Division street in the village of Saratoga Springs, running easterly and westerly, crosses defendant's railroad track, running north and south. Deceased approached the track on the north side of Division street from the east. A train was standing on the easterly track, its engine projecting into the street about fifteen feet. The gates were down, and the gateman stood on the north side of Division street, and on the east side of the track. One Priester, with a horse and wagon, came up to the crossing also from the east. His horse was uneasy and restive. Deceased and Priester remained about twenty minutes at the crossing, she standing quite near the gateman. The latter opened the gate high enough for deceased to pass and looked at her. She then started to cross diagonally. When in front of the engine the gate tender raised the gate higher, so that Priester could pass, and he started, deceased at the time being in front of the engine. As Priester's horse started over the crossing the engine began blowing off steam, or "popping off," and frightened the horse, so that it ran against deceased, producing injuries that caused her death.

The defendant's motion for a nonsuit was granted and judgment entered dismissing the plaintiff's complaint.

The usual questions in this class of cases as to defendant's negligence, and the freedom of plaintiff's intestate from contributory negligence, are presented for consideration.

The question as to the contributory negligence of deceased requires no discussion or citation of authorities. The deceased, after waiting for twenty minutes at the crossing, on the gates being raised by the defendant's servant, attempted to go over the track. The raising of the gates was an assurance to her of safety as significant as if the gateman had beckoned to her or invited her to cross. (*Callaghan* v. *D., L. & W. R. R. Co.*, 52 Hun, 276–278.)

The facts were all before the trial court. There was nothing appearing to indicate negligence on the part of deceased. In crossing she was compelled to pass in front of the engine and into the traveled part of the street. Being there she could as well turn to the south-

erly as to the northerly side of the highway. Under the circumstances it cannot be held, as matter of law, that deceased was guilty of contributory negligence. As has been often held, the cases are rather exceptional where the question of contributory negligence can be taken from the jury, and this is clearly not one of those unusual cases.

The real question for consideration is whether the plaintiff succeeded in showing a negligent and wrongful act on the part of the defendant which caused the death of plaintiff's intestate.

It is held in *Borst* v. *The Lake Shore & Michigan Southern R. R. Co.* (4 Hun, 346; 66 N. Y. 639), a case in some regards similar to this, that "the very position of this engine in the public highway, and the occupation and blocking up of said highway by it, was of itself an act of negligence." In the case under consideration the engine remained in the highway twenty minutes before the gates were raised. And when the gates were so raised plaintiff, having to cross the tracks, necessarily was compelled to go close to the engine. Under the authority above cited the fact of defendant's occupying the highway with its engine would seem evidence of negligence on the part of defendant sufficient to carry the case to the jury.

It is suggested by the learned counsel for defendant that there was no evidence that the standing of the engine in the street caused the accident. That it was the escaping of steam, the popping off of the engine, that frightened the horse. That this popping off was purely the result of a mechanical operation. That it was shown that when an engine stands a little while steam accumulates, and when it reaches a certain point the automatic safety valve "pops," and that is what caused the sound. In other words, an engine standing is liable from time to time to have this escape of steam, and make the same kind of noise that frightened Priester's horse.

We think the facts shown in this case — the raising of the gate by defendant's servant, which, as we have seen, was an assurance of safety to Priester and deceased, the engine at the time projecting fifteen feet into the highway, so that a person in crossing must pass close to it, and the liability of the engine at any time to suddenly blow off steam, and make a noise calculated to frighten a horse, constituted evidence of negligence that should have been submitted to the jury. The negligence was not in leaving a silent engine in the

highway, but an engine that would puff, blow off steam and "pop." The negligence was in leaving an engine *as it was* in the place where this one was left. If the engine had been out of the highway so that Priester's horse had not been compelled to pass close to it, and steam was blown off, the jury could have found from the evidence that the horse would not have become unmanageable. Priester had been able to manage it for twenty minutes thirty or forty feet from the gates.

It is urged by counsel for defendant that there was no evidence to show that defendant's train, to which the engine in question was attached, was not so long as to make the projection of the engine into the street necessary. If the engine was necessarily in the highway it was for the jury to say whether it was not negligence on the part of the defendant to raise its gates, and thus invite travelers to pass over the track, knowing, as its servants did, of the liability of the engine to suddenly emit steam. (See *Keech* v. *R., W. & O. R. R. Co.*, 35 N. Y. St. Repr. 902.)

Again, whether it was necessary for the engine to remain in the highway was a question of fact under the circumstances of the case. The defendant could have detached its engine and taken it across the street. Can it be deemed necessary to block up a traveled street in a large village for twenty minutes when in a moment the engine could have been detached and moved?

On the whole, we think that the fact that defendant left standing on the track in a traveled highway a dangerous machine liable at any moment to "pop off," and thus frighten horses, and while the engine was so standing raised its gates, was evidence of negligence which should have been submitted to the jury.

If a negligent act of defendant caused Priester's horse to become frightened and run away and cause the death of plaintiff's intestate this action can be maintained. (*Lowery* v. *Manhattan Ry. Co.*, 99 N. Y. 158.)

The judgment should be reversed and a new trial granted, costs to abide the event.

HERRICK, J., concurred upon 4 Hun, 346; MAYHAM, P. J., dissented.

Judgment reversed, new trial granted, costs to abide event.