KALBUS, Respondent, vs. ABBOT and another, Trustees, Appellants.

*October 1 — October 14, 1890.*

RAILROADS: *Negligence: Frightening horses at street crossing.* (*1, 2*) *Evidence: Character of team: Immaterial error.* (*3*) *Special verdict.* (*4*) *Contributory negligence: Instructions.* (*5*) *Management of train: Court and jury.*

1. In an action to recover for personal injuries caused by plaintiff's horses being frightened by a locomotive and running away, a witness who owned the horses about a year before the accident was

properly allowed to testify as to whether they were gentle or wild when he owned them.

2. The fact that the plaintiff was allowed to testify that no one had ever warned him about this team, is *held* not sufficient ground for a reversal of the judgment in his favor.

3. Where the questions submitted for a special verdict covered the whole case, it was not error to refuse to submit other questions, the answers to which would not have been conclusive either way.

4. An instruction that "the fact that this team may have once before run away, or was easily frightened, was not contributory negligence on the part of the plaintiff unless the jury find that a person of ordinary care and prudence would not drive such a team over this railroad crossing under all the circumstances in this case,"— is *held* sufficiently favorable to defendants.

5. The evidence in this case — tending to show, among other things, that after a street in a city had been blocked for ten or fifteen minutes by defendants' train, and a number of teams, including the plaintiff's, had gathered, waiting to cross, the train was backed off the street, and the engine became hidden from the plaintiff by a building; that the defendants' flagman at once signaled to plaintiff to cross, but before he could pass the tracks the engine returned into the street, blowing off steam and making a great noise; and that plaintiff's horses were frightened thereby and ran away, causing the injuries complained of — is *held* to sustain a finding by the jury that defendants' servants were guilty of negligence.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is an action to recover damages for a personal injury which the plaintiff claims was caused by the negligence of the defendants. The defendants were operating a railroad running through the city of Oshkosh, at and before the time the plaintiff was injured. The plaintiff sustained the injury complained of in attempting to cross the tracks of the defendants' railroad where they cross Jackson street, one of the public streets of said city. The facts are substantially as follows: On the day the injury occurred, the plaintiff was driving a team of horses attached to an empty stone wagon on Jackson street in said city. As he approached from the north the place where the railroad

tracks crossed that street, a train of the defendants' cars obstructed the street. Plaintiff stopped his team on the north side of the crossing, and waited until the train moved from the street along which he was driving, the train moving to the east or northeast, and, as soon as the train with engine attached had backed out of the street, a flagman of the defendants stationed at this crossing indicated to the plaintiff that the way was clear for him to pass. The plaintiff started his team immediately, and moved towards the track. When he reached the track the engine attached to the train that had obstructed the way moved forward towards the crossing and near to the plaintiff's horses. The horses became frightened and unmanageable, and ran away, and threw the plaintiff from the wagon and broke his leg. These facts are undisputed, except that the testimony of the defendant tends to show that the engine was at least seventy-five feet east of the crossing when the plaintiff's horses became frightened and unmanageable, and was backing away from the street, instead of towards the street as claimed by the witnesses on the part of the plaintiff.

The testimony on the part of the plaintiff shows that plaintiff stopped his team within about thirty feet north of the railroad track when he approached the crossing on Jackson street. The street was then blocked, and, after waiting about ten or fifteen minutes, the engine and cars moved northeasterly off Jackson street, and behind a blacksmith shop which stood on the corner of Jackson street and northerly from and near the railroad tracks. The engine was at the west end of the train, and backed the cars easterly across Jackson street, and as soon as the engine had backed from the street it was hidden from the view of the plaintiff by the blacksmith shop; and the flagman of the defendants, standing on the south side of the tracks and in full view of the engine, signaled the plaintiff to come across the tracks.

The plaintiff started immediately upon receiving the signal, and when his team had gotten upon the railroad tracks the engine returned from the east and from behind the blacksmith shop, and came within twenty feet of the team and within the limits of Jackson street, making a great deal of noise, and blowing off steam from the cylinder cocks and from the escape valve.

The evidence also shows that while the street was blocked by the train a dozen or more teams had approached the crossing and were waiting to pass along the street and over the tracks of the railroad. The evidence also tended to show that the team the plaintiff was driving had been frightened by the engine and cars at the same place about fourteen days previously, when driven by the plaintiff, and had then become unmanageable and run away. There was also some other evidence which tended to show that this team was excitable and difficult to manage in the vicinity of a railroad engine and train.

On the trial in the circuit court the jury returned a special verdict as follows: "*First.* Were the defendants or their servants guilty of negligence that contributed to the injury of the plaintiff? Answer. Yes. *Second.* If you answer the foregoing question 'yes,' state in what particular such negligence consisted. A. In the flagman's signal to the plaintiff to cross when the engine was too near, and engine allowed to make more noise than necessary. *Third.* Was the plaintiff guilty of negligence that contributed to the injury? A. No. *Fourth.* If the plaintiff is entitled to judgment, at what sum do you assess his damages? A. $1,000."

Judgment was entered in favor of the plaintiff for the damages found, and costs, and the defendants appeal to this court, and assign as reasons for the reversal of the judgment the following: "*First.* It was error to permit the plaintiff's witness Karrow to answer the following question: 'Well, now go on and state while you owned the horses as to their

being fractious or wild, or vicious or gentle.' *Second.* It was error to permit the plaintiff to answer the following question: 'Did John Monahan or anybody else ever warn you about this team?' *Third.* It was error for the court to refuse to submit the questions to the jury asked by the defendants [hereinafter set forth]. *Fourth.* It was error for the court to give the instruction asked by plaintiff [hereinafter set forth]. *Fifth.* It was error to refuse the instruction asked by defendants [hereinafter set forth]. *Sixth.* It was error for the court to refuse the instruction as asked by defendants, and error to modify it as modified by the court, and error to refuse the latter portion of the instruction wholly." [1]

For the appellants there was a brief by *Charles W. Felker*, attorney, and *Howard Morris*, of counsel, and oral argument by *Mr. Felker*.

*Gabe Bouck*, for the respondent.

TAYLOR, J. The objection to the testimony of the witness Karrow was properly overruled. This witness claimed to have owned this team about a year before the accident, and had owned them for two years previously thereto, and knew the character and disposition of the team. As the excitability and nervousness of the team was to some ex-

---

[1] This instruction was as follows: "If the jury find from the testimony that the plaintiff drove a team of horses that he knew were easily frightened by a locomotive, while such locomotive was being used in switching cars, *it is for you to say from the evidence whether* it was negligence on his part to drive such team of horses in close proximity to defendants' railroad while defendants' servants were engaged in switching, [and if the horses became frightened by reason of the ordinary and usual noises made by such locomotive while engaged in such switching, and ran away, and the plaintiff was injured thereby, then you ought to answer question number three, 'Yes,']" The court inserted the words in italics, which were not in the instruction as asked, and omitted the words in brackets, and gave the instruction as thus modified. The other instructions referred to will be found stated in the opinion.— REP.

tent a material question in this case, it seems to us that it was proper that this witness should be allowed to state what their character in this respect was when he owned them.

The second exception, to the question put to the plaintiff, "Did John Monahan or anybody else ever warn you about this team?" would seem to have been a proper exception, as it does not appear to have been material unless it had been claimed by the defendants that he had been so warned. But, if it be admitted that no such claim had been made on the part of the defendants, it seems to us that the answer to the question was so wholly irrelevant to the questions in issue that it could not have prejudiced the defendants, and should not therefore be held a sufficient ground for reversing the judgment in this case.

It is insisted that it was error to refuse to submit the following questions to the jury as a part of their special verdict: "(1) Did the team the plaintiff was driving run away because they were easily frightened by a locomotive and the noises usually made by locomotives when switching? (2) How far was the front of the locomotive from the plaintiff's horses or wagon at the time such horses first attempted to run?" We think there was no error in refusing to submit either of these questions. The answers to these questions would not have been conclusive of the right of either party to a verdict in the case. The questions in fact submitted to the jury covered the whole case.

An exception is taken to the instructions given to the jury, and two exceptions for a refusal to give certain instructions asked by the defendants. By an examination of the instructions given it appears that most of them were drawn up by the plaintiff's or by the defendants' counsel, and given as requested. It seems the counsel for the defendants proposed instructions covering the whole case, which were given by the court, and occupy over four pages of the printed case.

Kalbus vs. Abbot and another.

The exception to the part of the instructions given at the request of plaintiff's counsel, it seems to us, is not well taken. The instruction excepted to reads as follows: "The fact that this team may have once before run away, or was easily frightened, was not contributory negligence on the part of the plaintiff unless the jury find that a person of ordinary care and prudence would not drive such a team over this railroad crossing under all the circumstances in this case, which is a question for you to determine from the evidence." This instruction, we think, is sufficiently favorable to the defendants, and is in fact the rule given by the counsel for the defendants in an instruction asked on their part and given by the court. The defendants asked the following instruction as to what constitutes ordinary care: " Ordinary care is such care as men generally use in the business in which they are engaged, regard being had to the business in which they are engaged." Understanding that the want of ordinary care in a given case is negligence, it seems to us that the instruction objected to is more favorable to the defendants than the one given at their request. The instruction in effect says that the plaintiff was guilty of negligence "if persons of ordinary care and prudence would not have done as he did under all the circumstances." This was certainly sufficiently favorable to the defendants, and is more favorable to the defendants than if he had said that he was not guilty of negligence if men generally would have done as he did.

It was argued that the court erred in refusing to instruct the jury as follows: " There is no evidence in this case tending to show that the operation of the engine immediately preceding the accident whereby plaintiff was injured was attended with any unusual noises or any unusual escape of steam, and, so far as these matters are concerned, you are not at liberty to find that the defendants were guilty of want of ordinary care." Upon the evidence in this case,

we think this instruction was properly refused; and we are satisfied that the jury, under all the evidence in the case, was justified in finding negligence on the part of the flagman, and on the part of those managing the engine.

Taking the case as made by the plaintiff's testimony, as we must upon this appeal, we have this state of facts: The defendants had blocked a much traveled public street in the city of Oshkosh with their engine and cars for at least ten or fifteen minutes, and during that time ten or twelve teams had gathered upon the opposite side of the railroad tracks. The train is backed off the street, and the engine is hidden to those on the north side of the tracks. Immediately when the engine had passed the street, those standing on the north side are signaled to pass over, and instantly the engine changes its direction and approaches the street, blowing off steam from the cylinder cocks and from the escape valve, making a great noise, and discharging a great volume of steam, and in that way approaches ten or fifteen feet within the bounds of the street at the crossing, before the plaintiff, who stood but thirty feet north of the track and started immediately on receiving the signal, could pass the railroad tracks.

Under this state of facts, it appears to us that the jury might well say it was negligence on the part of those in charge of the engine to run into the street when they must have known there were teams passing, blowing off steam in the way it is said they did. The evidence does not show that there was any necessity for blowing off the steam as it is said they did at the time they came back upon the street, and when they must have known that there were teams passing the street at the time. Common prudence would dictate that it was not a proper thing to do when entering upon a public street in a city, when it was known that teams were passing at the time. We think the jury is supported by the evidence in finding that the flagman sig-

naled too soon. He should have satisfied himself that those in charge of the engine were not intending to return immediately upon the street, before he signaled to the teams to cross. This is not controverted, and the signal man justifies himself by claiming the fact to be that the engine did not in fact return to the street, but continued its course easterly away from the street until after all the teams had passed over. And the engine-men also justify their conduct in blowing off steam, not because it was prudent and necessary to do so while crossing the street, but because they claim the engine was continuing its course easterly and away from the street until after the accident happened, and that at the time it happened the engine was east of the street from 75 to 150 feet, and was not on or near the street at all. Adopting the claim made by the plaintiff, and which is supported by the evidence given on his behalf as to the acts of the flagman and the movements of the engine, the findings of the jury are clearly supported by the authorities. See *Penn. R. Co. v. Barnett,* 59 Pa. St. 259; *Guggenheim v. L. S. & M. S. R. Co.* 66 Mich. 150; *Petersburg R. Co. v. Hite,* 81 Va. 767; *Penn. R. Co. v. Horst,* 110 Pa. St. 226; *Manchester, S. J. & A. R. Co. v. Fullarton,* 14 C. B. (N. S.), 54; *Borst v. L. S. & M. S. R. Co.* 4 Hun, 346; *Toledo, W. & W. R. Co. v. Harmon,* 47 Ill. 298; *Hahn v. S. P. R. Co.* 51 Cal. 605; 1 Thomp. Neg. 351, and cases cited in the notes. Under the rule of law established in these cases and many others that might be cited, it is very clear that the findings of the jury in this case are not unsupported by the evidence in the case.

*By the Court.—* The judgment of the circuit court is affirmed.