PRESBY v. GRAND TRUNK RAILWAY.

In an action by a traveller on a highway against a railroad corporation for injuries caused by the fright of the plaintiff's horse by the noise made by the defendants' locomotive in blowing off steam while standing near a grade crossing, evidence tending to show that the plaintiff's horse was frightened by the noise of escaping steam; that no notice was given of the approach of the train by ringing the bell, or by a flagman or gates at the crossing; that the view of the train was obscured by box-cars on a side track within the limits of the highway; that a hand-car and semaphore post were standing within the limits of the highway; and that the planking at the crossing did not extend over a depression at a joint of the rails,—is competent and sufficient to be submitted to the jury.

In such a case, the fact that the steam escaped through an automatic valve such as is generally used by railroad companies, not under the control of the defendants' servants in charge of the locomotive, is not an answer to the charge of negligence as matter of law.

CASE, for injuries on the highway crossing at North Stratford, October 9, 1888, by reason of the defendants' obstruction of the crossing, defective crossing, escape of steam from a locomotive, and neglect in giving the warning signals required by statute. The defendants' track crosses the highway west of their station at North Stratford at grade and at a right angle. The general direction of the highway is northeast and southwest, and of the defendants' track and road-bed southeast and northwest. Parallel with the main track and seven feet southwesterly from it is a side track extending across the highway and beyond in each direction. The highway was laid out in 1855 three rods wide. A plank crossing extends across both tracks twenty-four feet in width in the centre

of the highway, a space thirteen feet in width on each side not being covered with planks. A semaphore pole was set in the ground nine and eight tenths feet northerly of the north rail of the main track, and three feet easterly of the westerly line of the highway. At the time of the accident a hand-car stood upon the ground a little southeasterly from the semaphore pole, and within two feet of it, and between the pole and the main track, left there by the defendants' section hands, who had been repairing the crossing until with an hour or so of the time of the accident. There was a depression in the road-bed between the rails of the main track about three feet west of the westerly end of the plank crossing and ten feet east of the westerly line of the highway. The depression was caused by the way the ends of the rails are supported. Where the rails come together, two ties or sleepers are placed across the road-bed about three inches lower than the other sleepers and about two feet apart. Underneath the rails is placed a piece of plank about three feet long, three inches thick, and six to ten inches wide, resting upon and spiked to the two sleepers above mentioned. Upon this piece of plank and under the rails a thin iron plate is so placed that the ends of the rails come together at the longitudinal centre of the plate and plank, to which the rails are firmly spiked. The track is thus constructed to render it elastic, and to prevent injury to the ends of the rails. The place in the track where the ends of the rails are thus joined is called a joint. The surface of the road-bed between the two sleepers that support the ends of the rails is about three inches below the surface of the road-bed between the other sleepers. The distance from the surface of the ground to the top of the rail at the joints is usually about seven and a half inches. Repairs were made at the crossing, and at the first joint west of the plank crossing, on the day of and before the accident. The plaintiff's evidence tended to show that the gravel was not all put back, so that the depression between the sleepers at that place at the time of the accident was greater than usual; but the defendants' evidence was in conflict with this. The accident to the plaintiff happened October 9, 1888, about 2 o'clock p. m. The train from Portland to Montreal, due at North Stratford at 1:45 p. m., arrived about fifteen minutes late. The express train from Montreal to Portland crossed the other train at North Stratford. The plaintiff, travelling northerly in the highway, on a spring-board drawn by a horse, drove upon the crossing. When his horse had crossed over the southerly or side track, and had reached the main track, steam escaped from the pop-valve, so called, of the defendants' locomotive attached to the train which had just arrived from Portland. The locomotive was standing a few feet east of the crossing to enable passengers to leave and enter the train. The valve through which the steam escaped was automatic, having been affixed to the dome of the engine and adjusted at the defendants' repair-shops according to their usual practice since

1874, so that if there was a greater pressure than one hundred and thirty-five pounds of steam at any time the cap or top of the valve would rise and the steam would blow off.   The defendants' evidence tended to show that no adjustment of the valve is so safe for employés, passengers, and the public as this, and that such valves are used by all railroad companies, although the pressure with some is higher.   The plaintiff introduced no evidence to contradict this. The defendants' servants operating the train had no control over the valve, except by regulating the fire.

The plaintiff's horse was frightened at the escape of steam, sprang suddenly to the left, and ran across the track in a northerly direction, the wheels on one side of the spring-board passing through the depression mentioned in the road-bed, partially throwing the plaintiff from his position upon the carriage-seat.   The horse and spring-board passed about three feet southwesterly of the hand-car and semaphore post (without touching either), up the embankment toward the river.   The defendants' bridge over the Connecticut river is about three hundred feet northwest of the crossing. The plaintiff was thrown out and against another semaphore post, at a point about one third of the distance from the crossing to the bridge, and injured.   The horse ran upon the bridge a short distance, fell, and was permanently injured.   The plaintiff's evidence tended to show that he was travelling with a suitable horse and carriage, and the defendants introduced no evidence to the contrary.   The defendants' evidence tended to show that the locomotive was suitable, and the plaintiff introduced no evidence to the contrary, except that it appeared on the cross-examination of one of the defendants' witnesses that the tendency of the times is to build heavier engines than this one, which had been in use fifteen years, and that he had read of these large engines carrying more than one hundred and thirty-five pounds' pressure.

After the evidence was closed, the defendants moved that a verdict be ordered for them.   The motion was denied, and the defendants excepted.   The remaining exceptions are stated in the opinion.

*D. C. & J. W. Remick* and *Parsons & Madden*, for the plaintiff.

*Ossian Ray* and *Drew & Jordan*, with whom was *A. A. Strout* (of Maine), for the defendants.

CLARK, J.   To maintain his action the plaintiff must show that his injury was caused by the defendants' want of ordinary care. He complains that the defendants were negligent in blowing off steam and thereby frightening his horse; in not giving notice of the approach of the train by ringing the bell for a distance of eighty rods before reaching the crossing; in leaving box-cars on the side track, one of which was within the limits of the highway

in such a position that the view of the train was obscured; in not having a flagman or gates at the crossing; in placing a hand-car and semaphore post in the highway; and in not extending the planking at the highway crossing over the depression at the joint of the rails, and thus leaving the crossing of insufficient width. Having produced evidence tending to establish the matters complained of, the questions of the plaintiff's care and of the defendants' negligence were properly submitted to the jury.

The motion that a verdict be ordered for the defendants was based upon the claim that the escape of steam from the engine, being regulated by an automatic valve such as is generally used by railroad companies, was involuntary, and could not be controlled by the defendants' servants, and therefore the defendants were not chargeable with negligence on account of the noise of the escaping steam; and that the other alleged negligent acts and omissions were too remote and immaterial.

The operation of the automatic pop-valve was simply to allow the steam to escape whenever the pressure exceeded one hundred and thirty-five pounds. It did not in any way affect the quantity of steam generated. The amount of steam produced was under the control of the defendants' servants in charge of the engine, and the pressure upon the pop-valve depended upon the management of the fire and the condition of the engine as to working steam or standing still. The evidence was, that valves of a higher pressure are sometimes used, and it could not be said as matter of law that the valve upon the defendants' engine was suitable. It was a question of fact for the jury to determine, whether under the circumstances the defendants were guilty of negligence in causing the fright of the plaintiff's horse by the escaping steam; and in determining this question it was material to inquire what precautions the defendants used to warn travellers upon the highway of the approach of the train, and what opportunity the plaintiff had of knowing that the engine was standing near the crossing; and for this purpose the evidence whether the bell was rung, whether the box-cars obstructed the view of the train, and whether any warning was given of the presence of the engine at the crossing, was competent and material. So, also, the evidence as to the location of the hand-car and semaphore post, and the depression in the road-bed within the limits of the highway, and the width of the planking at the crossing, was competent upon the question whether the defendants were exercising ordinary care to guard against injury to travellers whose horses might be frightened by the locomotive and the noise of escaping steam, and upon the inquiry as to the cause of the accident to the plaintiff. *Gordon* v. *Railroad*, 58 N. H. 396.

The testimony of Hinman, the highway surveyor, that he called the attention of the defendants' station agent to the depression between the ties at the end of the planking on the crossing, that it

was nine inches or more from the surface of the ground to the top of the rail, was competent to show that the defendants had notice of the condition of the crossing at that point before the accident. Upon similar ground, the testimony of Potter and others that engines standing at the station frequently blew off steam and frightened horses was admissible to show the defendants' knowledge of that source of danger to travellers on the highway crossing, which was a material fact to be considered in determining whether the defendants exercised reasonable care to prevent injury from that cause.

The evidence as to the practice of leaving cars on the side track in such a position as to obstruct the view of a train at the station to a traveller on the highway, as to ringing the bell and blowing off steam, was admissible as tending to show what was done at the time of the accident to the plaintiff.   *Hall* v. *Brown*, 58 N. H. 93 ; *Parkinson* v. *Railroad*, 61 N. H. 416.   Although the pop-valve was automatic, the quantity of steam was controlled by regulating the fire, and the evidence of blowing off steam tended to show that the pressure usually carried at that point was such that steam was liable to escape through the valve while the train was standing at the station.

*Judgment on the verdict.*

SMITH, J., did not sit : the others concurred.