## HICKEY v. RIO GRANDE WESTERN RY. CO.

### No. 1621 (82 Pac. 29).

1. RAILROADS — PERSONS IN YARDS — INJURIES — NEGLIGENCE—EVIDENCE.—In an action against a railroad for injuries to a teamster engaged in loading his dray from a freight car, such injuries being caused by his horses taking fright at a sudden escape of steam from a locomotive, evidence *held* sufficient to show that the steam escaped from the cylinder cocks, which were under control of the engineer, and not from some appliance which was not subject to the engineer's control.

2. SAME—DUTY OF RAILROAD.—A railroad owes teamsters who are rightfully in its yard engaged at lawful work the duty of exercising reasonable care and vigilance in the movement and operation of its engines and cars so as to avoid injuring them, and is liable for injuries to such teamsters resulting from their teams taking fright at noises such as the escape of steam made unnecessarily or negligently.

3. SAME—NEGLIGENCE OF ENGINEER—QUESTION FOR JURY.—In an action against a railroad for injuries to a teamster engaged in loading his dray from a freight car, such injuries being caused by his horses taking fright at a sudden escape of steam from a locomotive, whether the engineer was in the exercise of ordinary care, or whether he needlessly or negligently permitted the steam to escape, *held*, under the evidence, a question for the jury.

4. SAME—CONTRIBUTORY NEGLIGENCE.—Whether the teamster was himself guilty of contributory negligence in the manner in which he managed and placed his team was also a question for the jury:

5. SAME—INSTRUCTIONS.—An instruction that if the evidence showed that the escape of steam might have been either from an appliance over which the railroad's employees had control, or from an automatic appliance outside of their control, and did not show affirmatively that the escape of steam was not from such automatic appliance, there could be no recovery, was properly refused, where the court did charge that the burden was on plaintiff to establish by a preponderance of the evidence the allegations of his complaint, naming them; that he must further establish that the escape of steam was the result of some act or omission of defendant's employees; that it must appear, not only that the escape of the steam was under the control of the employees, but that it was unusual and unnecessary, or recklessly and wantonly done: and that negligence could not be inferred from the mere fact that the accident happened, nor from the fact that steam escaped from the engine.

6. SAME—EVIDENCE.—Testimony of the failure to give signals or warning when the engine was started and put in motion toward plaintiff's team was competent on the issue of an alleged act of negligence consisting of such failure to give signals, and also on the issue of the engineer's care in handling his engine and his regard for plaintiff's rights, and on the issue of plaintiff's contributory negligence.[1]

7. SAME—INSTRUCTIONS.—The court having fully charged on the issue of plaintiff's contributory negligence, a further charge that if plaintiff in failing to black the wheels of his team or failing to keep a lookout for the approach of the engine, was not in the exercise of ordinary care, etc., the verdict should be for defendant, was properly refused, as superfluous and as improperly singling out isolated facts and confining the attention of the jury to them.[2]

8. TRIAL—INSTRUCTIONS—FORM.—It is sufficient if the jury are properly instructed in substance, and the court need not adopt the form of language presented by counsel, but may choose that mode of expression which he deems best adapted to intelligently state the law to the jury on the requested subject-matter.

9. SAME—UNNECESSARY INSTRUCTIONS.—Where the court expressly and affirmatively charged the jury that plaintiff, before he was entitled to a verdict, must establish specifically enumerated propositions by a preponderance of the evidence, which was defined as the greater weight of the evidence, it was not necessary for the court to charge to find for defendant, if the weight of the evidence was in favor of defendant, or if it was equally balanced.

[2] Christenson v. Railway, 27 Utah 132, 80 Pac. 746.
[2] Leak v. Railway, 9 Utah 246, 33 Pac. 1045.

10. SAME.—Where the case as submitted to the jury does not consist solely of issues of negligence raised on the complaint, but includes the affirmative issue of contributory negligence raised by defendant, a charge that, if the evidence is equally balanced, the issues should be found for defendant, is incorrect.[8]

11. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—The burden of proving contributory negligence is on defendant.

BARTCH, C. J., dissenting.

(Decided July 11, 1905.)

APPEAL from District Court, Salt Lake County; S. W. Stewart, Judge.

Action by Daniel Hickey against the Rio Grande Western Railway Company. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*Sutherland, Van Cott & Allison* for appellant.

*Rogers & Street and W. R. White* for respondent.

### APPELLANT'S POINTS.

The evidence does not show that defendant was guilty of any negligence. The rule is that where horses are frightened by noise incident to the use of engines that the railroad company is not liable, unless the noise was both unnecessary and unusual. It is a matter of common knowledge that the exhausting of steam from an engine is something frequently accompanying its movement, and it devolves upon a person conplaining to prove that under the particular circumstances there was no necessity for so doing, and that under the particular circumstances it was unusual.

The testimony does not show that the steam escaped from the cylinder cocks. The burden was upon the plaintiff to

---

[8] Wells v. Construction Co., 27 Utah 524, 76 Pac. 560, overruled.

established that the steam escaped from some part of the engine under control of the engineer. If the steam escaped from an automatic valve or other appliance not under the control of the engineer, of course the railroad company could not be held guilty of negligence. This rule is well settled. (*Ry. v. Simon,* 54 S. W. 309; *Duvall v. Ry. Co.,* 49 A. & E. R. R. Cas. 313.)

It seems clear from the testimoy in the case that the plaintiff utterly failed to prove that the escaped of steam from the cylinder cocks, assuming it to have so escaped, was either unnecessary or unusual. Under such circumstances the court should have instructed the jury to find for the defendant. (1 Rorer on Railroads, page 704.) The right to operate a railroad includes the right to make the usual noises incident to the use of its engines and trains, and it is matter of common knowledge that the exhausting of steam from its cylinder cocks is something very frequently accompaning the movement of engines. (*Cahoon v. Ry. Co.,* 85 Wis. 572; *Walters v. Ry. Co.,* 104 Wis. 259; *Abbott et al. v. Kalbus,* 74 Wis. 504, 506.)

The blowing off of the steam must be shown to be unnecessarily, recklessly and wantonly done, or with the intention of frightening a team to enable the plaintiff to recover. (*Stanton v. Louisville Ry. Co.,* 8 So. 798.)

To entitle the plaintiff to recover, it is essential to show that the quantity of steam escaping and the noise made were both unusual and unnecessary. (2 Thompson on Negligence, sec. 1908; *Ry. Co. v. Burkhardt,* 34 Atl. 1010.)

And where it is shown by the evidence only that it was unusual to emit steam from the engine at the time when and place where it was emitted, with no evidence tending to show that the noise made was unnecessary, plaintiff cannot recover. (*Colman v. Ry. Co.,* 40 S. E. 247; *Ry. Co. v. Black,* Id.)

Some evidence must be given of facts and circumstances from which it may be inferred that the doing of the act at the particular time or under the particular circumstances was not in the exercise of due care and prudence. The bur-

den is on the plaintiff to show such special facts and circumstances. (*Ry. Co. v. Clarke,* 23 L. R. A. 509; 2 Thompson on Negligence, sec 1922.)

There was a safe and an unsafe way of doing the work which he was called upon to do. He voluntarily selected the more unsafe way. The general rule is stated by our own Supreme Court in the case of *Fritz v. Electric Light Company,* 18 Utah 503: "When there are two or more methods or ways by which a servant may perform his duties and he voluntarily chooses the most hazardous, knowing it to be such, he does so at his own risk." (*Goldstein v. Ry. Co.,* 46 Wis. 404; *Gilbert v. R: R. Co.,* 128 Fed. 529; *Morris v. Ry. Co.* 108 Fed. 747; *Dawson v. Railway Co.,* 114 Fed. 872; *Cunningham v. Ry. Co.,* 17 Fed. 882; *Jackson v. Crilly,* 26 Pac. 331; *Carrier v. U. P. Ry. Co.,* 59 Pac. 1075; *Russell v. Tillotson,* 140 Mass. 201.)

The position which the plaintiff took behind his dray, under the circumstances, was an obviously dangerous one and he was clearly guilty of contributory negligence in taking it without any precautions for his own protection. (*Goddard v. McIntosh,* 161 Mass. 253; *Lord v. Smelting Co.,* 21 Pac. 148; *Wheat v. St. Louis,* 64 L. R. A. 292.)

It is therefore no answer for the plaintiff to say that he was in the railroad yard in the discharge of his duty and that he was absorbed in the work of tying on his load. Every moment he was behind this wagon he was in a position of danger. As a man of years and experience, familiar with his surroundings, he was bound to know this. (*Stone Co. v. O'Brien,* 40 N. E. 430.) Neither is it any excuse for the plaintiff's failure to pay attention to the approach of the engine that the engine had passed before or that he believed or had reason to believe that his horses would not be disturbed. (*Muldowney v. Ry. Co.,* 36 Iowa 462.)

The rairoad company can be held responsible for frightening a team by permitting the escape of steam from its engine only where such escape of steam is both unnecessary and unusual. In 2 Thompson on Negligence, section 1908, the rule is laid down as follows: "It is only where the rail-

way company, through its servants, does something which is both unusual and unnecessary [author's italics] in the conduct of its business, that it is liable to one whose horse takes fright thereat." (*Railway Company v. Burkhardt*, 34 Atl. 1010; *Colman v. Ry. Co.*, 40 S. E. 247; *Ry. Co. v. Black*, Id.) As shown by the authorities already cited, the defendant company could not be held responsible for the escape of steam from an automatic appliance which was outside of the control of the operatives upon the engine. (*Ry. Co. v. Simon*, 54 S. W. 309; *Duvall v. Ry. Co.*, 49 A. & E. R. R. Cas. 313.)

The rule is well settled, as heretofore stated, that with certain exceptions, within which this case does not fall, the refusal of appropriate instructions upon request constitutes error. (2 Thompson on Trials, sec. 2347, and authorities cited; *Sailor v. Barnowski*, 60 Wis. 169; *Campbell v. Campbell*, 54 Wis. 90, 98; *Wells v. Utah Construction Company*, 27 Utah 524.)

## RESPONDENT'S POINTS.

The jury has found under the instructions of the court that this escape of steam was negligence. It then follows that this escape of steam was both unnecessary and unusual. The definition of negligence renders this conclusion irresistible. (*Petersburg Ry. Co. v. Hite*, 81 Va. 767.)

Now in the present case we think it clear that the engine, though within the company's yard, was not managed with due regard to the rights of the respondent who was lawfully in the exercise of proper care crossing its track. It does not appear that the engine might not have stopped at a much greater distance from the street where the steam might have been blown of without th danger of frightening horses lawfully crossing the track. (*Hahn v. Southern Pac. Ry. Co.*, 51 Cal. 605; *Weil v. St. Louis and S. W. Ry. Co.*, 64 Ark. 535; *Toledo Ry. Co. v. Harmon*, 47 Ill. 298, 95 Am. Dec. 489; *Mitchell v. Nashville Ry. Co.*, 40 L. R. A. 426; *Kalbus v. Abbott*, 46 N. W. 810; *Andrews v. Mason Ry. Co.*, 42 N. W. 514.) Injury occasioned by steam escaping therefrom,

company held liable. (*Omaha Ry. Co. v. Clark,* 23 L. R. A. 504.)

There must not be an unnecessary emission of steam. The burden of proving necessity was in this case upon the defendant. (*Mitchell v. Nashville Ry. Co.,* 40 L. R. A. 426.) This case held that a presumption of negligence arises from the blowing of a locomotive whistle loudly and repeatedly, under a bridge constantly used by all kinds of vehicles. Defendant has the burden of proving necessity. (*Bittle v. Atl. Ry. Co.* [N. J.], 23 L. R. A. 283.)

The appellant was bound to exercise ordinary care to the end of avoiding injury to the respondent while he was engaged in his work. (See Note 46 L. R. A. 58, a full collection of authorities; *Newson v. New York Central Ry. Co.,* 29 N. Y. 383; Note 46 L. R. A. 58. *Copley v. Union Pacific Ry. Co.,* 26 Utah 363.) The above decision clearly sustains the contention of the respondent. In rendering the opinion the court cites the following authorities: *Newson v. New York Central Ry. Co.,* 29 N. Y. 383; *Toledo, St. L. & K. C. R. Co. v. Hauck,* [Ind. App.], 35 N. E. 573. *Cent. Ry. Co. v. Hoffman,* 67 Ill. 287; *Chicago & N. W. Ry. Co. v. Goebel,* 119 Ill. 515, 10 N. E. 369; *Pittsburg C., C. & St. L. Ry. Co. v. Ives,* [Ind. App.], 40 N. E. 923; *St. Louis, I. & E. R. Co., v. Ridge* [Ind. App.], 49 N. E. 828; *The Joseph B. Thomas,* 46 L. R. A. 58, note Burden of proving necessity on defendant. (*Mitchell v. Nashville Ry. Co.,* 40 L. R. A. 426.) Under the law it need not be unusual in order to justify a recovery. (*Petersburg v. Hite,* 81 Va. 767.)

Judge Thompson on his work on Negligence says, vol. 1 page 351: "Whilst no liability attaches for damages arising from the doing of these acts under proper circumstances, yet it will be different if they are done without necessity, negligently or wantonly. (*Toledo Ry. Co. v. Harmon,* 47 Ill. 298; *Nashville Ry. v. Sarns,* 9 Heisk 52; 24 Am. 296; *Mitchell v. Nashville Ry. Co.* [Tenn.], 40 L. R. A. 426.) Special necessity must be proved by defendant.

The authorities heretofore cited upon the question of escaping steam and the following are respectfully referred to

the court; 2 Shearman & Redfield on Neg., par. 426, and cases cited; Patterson, Ry. Accident Law, p. 151, and cases cited; 23 Am. and Eng. Enc. of Law, page 744, and cases cited.

In *Leak v. Ry. Co.,* 9 Utah 246, it is held that a request, which gave undue prominence to certain testimony without notice of other testimony, should be refused. This case was afterwards affirmed in the 163 U. S. 280. (*Ry. Co. v. Ives,* 144 U. S. 433.) So it can be said in the case at bar that the charge of the court, construed as a whole, as it must be, was all that the defendant had a right to demand. (*Holland v. O. S. L. Ry. Co.,* supra; *Major v. O. S. L. Ry. Co.,* 21 Utah 141.) These too much on the facts—*Chipman v. Evans,* 41 Ill. 251; *Williamson v. Tison,* 105 Ala. 645; *Hatch v. Marsh,* 71 Ill. 371.

STRAUP, J.

1. This is an action for personal injuries. The substance of the complaint is that appellant unnecessarily, negligently, and wantonly permitted steam to escape from one of its engines in its freight yard, where the respondent was engaged in unloading stoves from a box car onto a dray, thereby frightening his team, and in failing to give signals or warning of the approach of the engine. A verdict was had in favor of respondent, and appellant appeals.

The material facts, as disclosed by the evidence of respondent, show: That there were a number of tracks in appellant's freight yard at Salt Lake City, where the accident happened, running north and south. Respondent was there unloading stoves from a box car, standing on what was called the "team track," onto a dray drawn by a team of horses. The stoves were shipped and belonged to the Western Moline Plow Company, who had engaged the Salt Lake City Transfer Company to convey the goods from the car to its place of business. Respondent was in the employ of the transfer company. The box car containing the stoves was placed by appellant on the team track, there to be unloaded, and the goods to be received by the plow company. About forty feet east

of this track was another track running parallel with it. Respondent had backed his team opposite the door of the box car, so that his team was facing east. While there, with others, engaged in loading stoves, appellant propelled an engine upon and along the east track, passing respondent's team, and stopped to the north of them about ninety or one-hundred feet. As the engine was standing there, the respondent and others noticed a man leaning out of the cab window; whom they took to be the engineer, and also saw a man standing in the gangway looking to the west. The ground was level, no objects intervening. It was broad daylight. Respondent could plainly see the men on the engine, and the engineer as plainly could see respondent's team and the men working about the dray. While the engine was standing at said place, respondent finished loading, drove his dray up about three feet, and began to tie his load at the back end. To do that, it was necessary for him to drive up that distance. While tying the stoves in the dray, the said engine, which had been standing about five or ten minutes, without giving any signal or warning, was put in motion and run south about as fast as a horse would trot, and, when opposite respondent's team, steam was permitted to escape from the engine and against the horses, causing them with a flash to suddenly bolt back, pinning respondent against the box car, and injuring him. The heads of the horses were about eight feet from the engine. Respondent saw the engine standing north of him, and saw what he took to be the engineer in his proper place in the cab; but, as stated by him, he did not know how long the engine would stay where it was, and did not know what they were going to do with it. The manner in which the engine was operated and the circumstances of the transaction are best described in the language of the witnesses themselves:

One witness, who was standing in the car door, stated: "While he [respondent] was engaged in tying the rope from one side of the hind end to the other, I observed an engine going south on the track just east of and adjacent to the track on which the box car was standing. At that time I

saw steam which came from the engine. It made a noise. I didn't exactly see the steam come from the engine but I could see it come kind of under the engine and raise up in the horses' faces. When it first came in contact with the horses it struck them about on their knees, I should judge, and then it raised up over their heads. When the steam came in contact with the horses' legs and heads, they backed very quickly, and it caught Mr. Hickey between the dray and the car. I noticed that the steam came from the bottom of the engine down near the ground. I did not notice that the steam went down, instead of going up. It went more straight out. I couldn't say just where it came from, for the horses were between where I stood and where it came from, so I couldn't see. It came from the side of the engine toward the bottom." Another witness to the transaction stated: "When I first saw it [the engine] on this occasion, they backed in from the south, going north, with three or four cars, and stopped, I should judge, about one hundred feet from the car where we were working. I saw it there, and saw the engineer and fireman, I suppose. They were dressed in overalls and cap. I remember about the time that the dray was loaded. Mr. Hickey was right in behind the dray at the time. The dray had been moved up for the purpose of roping the ranges in, and he was doing that work. I was standing in the car door, and Mr. Hickey was on the ground below me. We had just finished loading up this dray, and Mr. Hickey drove the team up and stepped in between the car and the dray to rope those ranges and stoves on, and all at once this engine came up, and right in front of those horses they shot off steam right from the cylinder. They came back with such a sudden move that Mr. Hickey did not have time to get out, and was crowded right in there. The engine went on a little farther and stopped, and one of the parties, the fireman or the engineer, came back. He looked at Mr. Hickey, who was then lying on the ground. When the engine shot off the steam it was right in front of the horses, about six or eight feet from their heads. As near as I can

recollect, the engine was almost directly opposite, and almost in the head of the horses, when the steam escaped. When they shot off steam that way from the cylinder, it sounded like 'Shi! shi! shi!' I saw the steam, and it came from the cylinder cocks of this engine. The steam shot up in front of the horses and raised up. It was all under the horses' feet, and it came up over their heads. I couldn't say how far it ascended in the air above the ground. It covered the horses' heads, and was above the heads of the horses. When the steam was discharged, the horses backed with a quick motion, with this man behind the dray." On cross-examination, this witness stated: "The reason I said it came from the cylinder cocks is because I don't see how it would get out of the cylinder unless it did. I do not know of any other place that it would come out. I saw the steam come out, and I judged it came from the cylinder cocks, and that is because I don't know of any other place in the cylinder that it could go out." On redirect he stated: "When the steam came out from the engine, it went down to the ground and up."

Respondent also put in considerable evidence of expert witnesses, describing the mechanism of a steam engine, the position of the cylinder, cylinder cocks, channel cocks, steam chest, the automatic or relief valve, and the offices and functions of these various parts; that the cylinder cocks are located underneath the cylinder, the latter being about from ten to twelve inches from the ground, and are situate on the right-hand side of the engineer, and are worked by him either by hand or foot, and are under his control; that when an engine stands for some little while there is some condensation of steam, which goes down into the cylinder, but that there should not be any condensation of steam to amount to anything, where an engine had stood from seven to ten minutes; that the steam chest is on top of the cylinder, and that the automatic or relief valve is on top of the steam chest, and that the purpose of it is that, if there is any leakage of steam, it will escape from the valve, and to let the steam escape while the engine is standing and when it is not under great pres-

sure; that where an engine had been standing on a level track from five to ten minutes, and then moved forward a distance of about ninety feet, it would not be necessary to discharge steam from the cylinder; that under such circumstances there would be no "thumping" or "pounding" of the cylinder on account of condensation of steam, and if there was condensation of steam in the cylinder the engineer could discharge it while the engine was standing or before it reached a distance of seventy feet, or it could be held without injury until the engine had traveled a distance of one hundred feet —and put in other evidence tending to show that under all the circumstances, it was not necessary to discharge steam at the time and place it was discharged.

Appellant introduced testimony from engineers, who, according to the dispatcher's train sheet, arrived with engines and operated in the yard on the day in question; but all of them denied any such circumstances taking place as testified to by the plaintiff and his witnesses, or as to the escape of steam and frightening a team, or injuring the plaintiff, or any one. The witnesses for appellant, having disclaimed any knowledge of the transaction, gave, therefore, no evidence as to the necessity of the escape of steam, or as to any circumstance attending the transaction. Appellant, however, put in expert evidence describing and explaining the construction and mechanism of a steam engine, the position of the steam chest, cylinder cocks, and relief valves, which did not materially differ from that of respondent's witnesses. It also gave evidence tending to show that, where there is condensation of steam, it is necessary to open the cylinder cocks, so as to relieve the cylinder and prevent damaging it, and that steam may escape, not only from the relief valve, but from the steam chest joints, and from imperfect or worn packing on the piston rod, and that, under some circumstances, it might be necessary to open the cylinder cocks after an engine had been standing from seven to ten minutes, and then moved from seventy-five to one hundred feet; but some of them stating it was dependent upon whether there were any persons or teams in the vicinity, and depended also upon

the manner in which the engine was handled, and what was to be done with it, and some also stating that, assuming that an engine was ordinarily safe and in good repair and steam was seen coming out from under the engine, they would say it came from the cylinder cocks or the channel cocks, both of which are under the control of the engineer. Appellant introduced no testimony in respect to the engine in question, nor any evidence with respect to the circumstances nor the occasion of the escape of steam on the day and at the place in question. It, however, gave evidence as to the likelihood of the condensation of steam under the circumstances, hypothetically put to experts, and that, if there was condensation of steam in the cylinder, it was necessary that it be relieved therefrom, in order to prevent damage to the cylinder and the engine.

2. It is contended by appellant that its motion for nonsuit ought to have been sustained, or that its request to direct a verdict for it ought to have been given. This is claimed upon the grounds that there was no evidence showing negligence upon the part of the appellant, for it is urged that the evidence does not show that the steam escaped from such portion of the engine as was under the control of the engineer, and that, at any event, it is not shown that the escape of the steam was unnecessary and unusal or was done negligently, and that the evidence affirmatively shows that the plaintiff was guilty of contributory negligence in going behind his dray, and in not observing a proper lookout for the engine, and in not blocking the wheels of his dray. It is claimed by appellant that, if the steam escaped from the automatic valve, or some appliance over which the engineer had no control, appellant was not liable; that to render it liable it was incumbent on respondent to show that the steam escaped from the cylinder cocks, or some appliance under the control of the engineer; that the evidence shows the steam may have come from the one as well as the other; and that, even though the steam came from the cylinder cocks, the evidence does not show its emission was unnecessary and unusual, or done negligently. Assuming, without deciding, that, if the steam es-

caped from the automatic or relief valve, appellant is not liable, and that respondent must show it was emitted from the cylinder cocks or some appliance under the control of the engineer, we are of the opinion that the evidence was sufficient to warrant a finding of the jury of such latter fact. While the positive and direct statement of the witness Harris, on his direct examination, that the steam did escape from the cylinder cocks, was somewhat weakened on cross-examination and to some extent made to appear that he came to that conclusion because he did not know where else it could come from, yet the jury could well arrive at the fact that the steam came from the cylinder cocks, from the description given them of the position on the engine of the automatic valve, the cylinder cocks, and the course the steam took as it escaped from the engine, and from the office and functions performed by its various parts as explained to the jury by the experts and by drawings and illustrations. The evidence shows that the automatic valve was on top of the steam chest, while the cylinder cocks were underneath and at each end of the cylinder, which was from ten to twenty inches from the ground. It appears, as testified to by some witnesses, that the steam came from under the engine, and by others that it shot out against the knees of the horses, and arose up over their heads; and there was evidence on the part of the experts that, if they saw steam come from under an engine which was in ordinary good repair, they would say it came from the cylinder cocks or channel cocks, both of which were under the control of the engineer, as was also shown by the evidence. It was also shown that the purpose of the automatic valve was to let the steam escape while the engine is standing still and when it was not under great pressure, although there may, under some circumstances, steam escape from the automatic valve while the engine is running, depending, however, largely upon the manner in which the engine is handled. We therefore conclude, from all the evidence and circumstances in the case, there was sufficient evidence from which the jury could well find the fact that the steam escaped from the cylinder cocks at the time in question.

We are also of the opinion that the evidence is sufficient to authorize the jury to find the fact that it was unnecessarily permitted to escape, and done under circumstances from which the jury could say it amounted to negligence. The only claim made by which it can be said that any necessity existed for the escape of the steam from the cylinder cocks was that while the engine stood there might have been, and probably was, condensation of steam in the cylinder in such quantity as to require it to be removed, and the cylinder relieved therefrom, in order to avoid damaging the cylinder and engine. But, to the contrary, there is evidence to show, and from which the jury could well find, that such was not the fact, and that ordinarily, under the circumstances as shown by the evidence, considering the length of time that the engine stood, the level ground, the condition of the weather, and the other circumstances shown, there would be no substantial or sufficient condensation of steam requiring it to be removed from the cylinder, and that, if there was such condensation of steam, it well could have been removed before the engine was put in motion, or before the engine arrived at the place where the team stood, or, that the engine, without injury or damage, could have been operated past the horses before discharging the condensed steam. The jury were authorized in finding that the engineer saw the team and the men about the dray engaged in loading; and there being evidence to show that the steam was discharged from the cylinder cocks against the horses when the engine was opposite them, and there being evidence showing that, if there was any occasion to relieve the cylinder from the condensed steam, it could have done before the engine was put in motion, or before it reached the team, or after it passed them, the jury were warranted in finding that the steam was unnecessarily discharged at the particular time, and was not done with that prudence and care that one operating an engine under the circumstances should have used, and was therefore, done negligently. While it is true appellant had the right to operate its engine in the yard at the time and place in question, and to make the usual and nec-

essary noises incident to such operation, including the usual and necessary escape of steam, and that for the making of such noises, if made neither unnecessarily nor negligently, appellant would not be liable, although the team took fright thereby and injured respondent. On the other hand, if such noises were made unnecessarily or negligently, and thereby respondent's team took fright, resulting in his injury, appellant would be liable. It was well stated:

> "The inquiry in every case, therefore, must be whether the company was exercising its rights in this respect in a lawful and reasonable manner, with a due regard to the rights of others who may be lawfully traveling in the vicinity of the railroad track; for it must be obvious that what may be due care in a thinly settled neighborhood or near an unfrequented road would be sheer negligence in a thickly settled town and on a street along which horses were being momentarily driven. Now, in the present case, we think it appears that the engine, although within the company's yard, was not managed with a due regard to the rights of the plaintiff, who was lawfully and in the exercise of proper care crossing its track. It does not appear that the engine might not have stopped at a much greater distance from the street, and where the steam might have been blown off without the danger of frightening horses lawfully crossing its track." (*Petersburg R. R. Co. v. Hite,* 81 Va. 767.)

It should also be conceded that respondent was rightfully in the yard aand engaged in a lawful pursuit, not only with appellant's bare knowledge and consent, but by its recognition of his right. It owed a duty to him commensurate with those rights, and to so operate and handle its engines and cars as not to needlessly or unnecessarily expose him to injury. The jury were well authorized to find that the presence of respondent and that of his team were known, or ought to

have been known, to the engineer. While the team was standing facing east between the two tracks, but forty feet apart, the engine was operated past them, and stopped to the north of them about ninety or one hundred feet, where the engine stood five or ten minutes, during all of which time the team remained and the loading was going on. During part of this time the engineer was leaning out of the cab window, and, when he put his engine in motion, the jury were justified in finding that the team and men working about the car and dray were seen and observed by him. Where teamsters, under such circumstances as here, are rightfully in the yard of appellant engaged at lawful work, it owes them a duty of all reasonable care and vigilance in the movements and operation of its engines and cars to avoid injuring them. (*Newson v. N. Y. C. R. Co.,* 29 N. Y. 385; *Chicago, etc., R. Co. v. Goebel,* 119 Ill. 515, 10 N. E. 369; *Stinson v. N. Y. C. R. Co.,* 32 N. Y. 333, 88 Am. Dec. 332; *Watson v. Wabash, etc., R. R. Co.,* 66 Iowa 164, 23 N. W. 380.) Here it may be said the team took fright, not only from the mere noise of the escaping steam, but from the fact that the steam was discharged against them. The jury may well have found that, as the team was but eight or ten feet from the engine and in plain view of the engineer, he ought to have known that the escaping steam was liable to strike the team, and, if so, it would be greatly disturbed, and injury likely to ensue. It was, therefore, a question of fact for the jury to say whether the engineer, at the time and place in question, was in the exercise of ordinary care, and as to whether the escaping steam was needlessly or negligently permitted. (23 Am. and Eng. Enc. Law, 744; 2 Shear. & Red. Neg., sec. 426; *Weil v. St. L. S. W. R. Co.,* 64 Ark. 535, 43 S. W. 967; 2 Thomp. Com. on Neg. secs. 1922-1925; *Railway Co. v. Harmon,* 47 Ill. 298, 95 Am. Dec. 489; *Kalbus v. Abbott et al.* [Wis.], 46 N. W. 810; *Mitchell v. Nashville, etc., R. Co.* [Tenn.], 45 S. W. 337, 40 L. R. A. 426; *Hahn v. S. P. R. R. Co.,* 51 Cal. 605; *Presby v. Grand Trunk Ry.* [N. H.], 22 Atl. 554.)

The claim made that respondent was guilty of negligence as matter of law is not tenable. He was where he had a right

to be, and was rightfully engaged at and about his work. His team was gentle, and accustomed to being about the yard and about moving trains, and ordinarily was not disturbed by their ordinary operations. At the time of the accident he was engaged in the performance of a necessary and proper act—that of tying the hind end of the dray. To do so, it was necessary that the dray should be moved a few feet from the box car. The act which caused his injury was, as found by the jury, the needless discharging of steam against his team. Ought he, in the exercise of ordinary care, to have anticipated such an act and guarded against its consequences? If so, what precaution ought he to have taken? We can but say that he was required to use all the reasonable care that a prudent man under like circumstances would have used. Whether respondent came up to that standard or not was a question of fact. It was dependent upon the situation of the premises, the things there done and about to be done, together with all the facts and circumstances surrounding the case. It is said he ought to have blocked the dray wheels; he should not have gone behind the wagon at the time he did; when he drove up his team, he ought to have turned it north, facing the engine. We cannot, as matter of law or abstractly, say the doing or not doing of these and like things is negligence. For us here concretely to say the doing or not doing of these things was negligence on the part of respondent, when considered in light of all the circumstances, is ourselves to measure the conduct and actions of respondent by what we think a reasonable prudent man would have done under like conditions, and then to assert that respondent did or did not come up to that standard. It is quite apparent that to do or not to do these things may be negligence in some cases as matters of fact, in others not, and is dependent upon time, place, and circumstances. Here the evidence shows it was reasonably necessary, in loading, to back the wagon against the car, which resulted in the team facing east. When the wagon was loaded, in order to tie the back end, it was necessary that it be driven up. To now say, as matter of law, in a freight yard of numerous tracks, upon which different engines and cars are being operated, re-

spondent should have turned his team facing north and facing the engine, and that anything done short of this was negligence, is most certainly invading the province of the jury; and the trier of the fact might very pertinently assert such an act would not have rendered the team less susceptible to fright or disturbance, or made respondent's position more safe from appellant's negligent act. Furthermore, there is evidence to warrant a finding that the team became disturbed and dashed back, not from the mere noise of escaping steam, but from its having been discharged against it. By their verdict the jury has found this was done negligently. To now say that respondent ought to have anticipated this act of negligence, and to have guarded against its consequences by the doing or not doing of these or like things complained of, is to say that one is in duty bound to anticipate the neligence of another. True, respondent knew the engine was standing where it was, ninety or one hundred feet from his team, and that when it started up it was as apt to go south, past him, as to go north, away from him. The consequences of the ordinary and usual operations of the engine he was in duty bound to anticipate, and to use ordinary care to avoid them. But the whole duty to avoid consequences of appellant's operation of its engine did not rest upon respondent. Each owed to the other a duty, and use of ordinary care. Respondent had the right to expect that use of care from appellant. In order that he may be freed from the charge of contributory negligence, he was not required to expect or anticipate this care on the part of appellant would not be observed, and that when the engine was opposite his team, steam would be negligently, as found by the jury, emitted from the engine and discharged against his team, and therefore should have guarded against consequences of such an act. Upon consideration of the whole matter, we are clearly of the opinion that respondent's acts and conduct, like that of appellant, were here questions of fact for the jury, and their finding thereon is conclusive.

3. It is also contended that the following request of the appellant should have been given: "Therefore the court fur-

ther instructs you that if the evidence in this case shows that the escape of steam may be either from an appliance over which the employees have control or from an automatic appliance which is outside of their control, and the evidence does not show affirmatively that the escape of steam was not from such automatic appliance, then your verdict must be for the defendant." Without deciding whether the request accurately states the law (see *Presby v. Grand Trunk Ry.* [N. H.], 22 Atl. 554; *Keech v. Rome, etc., R. R. Co.,* 59 Hun 617, 13 N. Y. Supp. 149; *Railway v. Simon* [Tex. Civ. App.], 54 S. W. 309; *Duvall v. Ry. Co.* [Md.], 21 Atl. 496), it is sufficient for us here to say that the substance of the above request was given by the court. After the court charged the jury that the burden was on the plaintiff to establish by a preponderance of the evidence the allegations of his complaint, naming them, before he was entitled to a verdict, it then stated: "He must further establish by a preponderance of the evidence that the escape of steam from the engine at the time and place and under the circumstances shown by the evidence was the result of some act or omission of an employee or employees of the defendant company, which such employee or employees could have controlled. Before you are warranted in finding a verdict for the plaintiff in this case, it must appear from the evidence, not only that the steam was permitted to escape from the engine, and that the escape of such steam was a matter under the control of the employees, but it must be shown further that the escape of such steam at the time and place and under the circumstances shown by the evidence was both unusual and unnecessary, or that it was recklessly and wantonly done, or with the intention of frightening plaintiff's team. You are further instructed that the defendant railway company has the right to operate its railroad and make the usual noises and permit the usual escape of steam from its engine which are incident to the use of such engine. The court further instructs you that negligence upon the part of the defendant company cannot be inferred from the mere fact that this accident happened, nor from the fact that steam escaped or

was permitted to escape from the engine. The plaintiff must further show that the escape of steam at the time and place, and under the circumstances shown by the evidence in the case was not in the exercise of ordinary care and prudence." It will thus be seen that the jury were several times told that, in order to find for the plaintiff, they must find by a preponderance of the evidence that the escape of steam was a matter under the control of the employees operating the engine and that such escape of steam was unusual and unnecessary, or was done negligently or intentionally.

4. It is also claimed that the court erred in admitting in evidence testimony to the effect that, when the engine was started and put in motion, and operated towards respondent's team, no signal or warning was given. The failure to give signals or warnings was alleged in the complaint as negligence. Such evidence was, therefore, competent to prove such alleged acts of negligence, and also as bearing upon the care of the engineer in handling and operating his engine, and as to whether he was operating it with due regard for the rights of respondent, and also as bearing upon the contributory negligence of respondent. (*Christenson v. Railway* 27 Utah 132, 80 Pac. 746.) And for like reasons the court did not err when stating to the jury the substance of the complaint, this alleged act of negligence in connection with and among the other allegations of negligence.

5. Appellant also complains because the court refused to give the following request: "Therefore, if you find that the plaintiff, in going behind his dray without blocking its wheels or taking any other precautions for his own safety, or without keeping a lookout for the approach of the engine, or arranging for another person to do so, was not in the exercise of ordinary care for his own safety, and that such neglect upon his part proximately contributed to his injury, then your verdict should be for the defendant." The court fully and accurately charged the jury on the question of contributory negligence and the care to be used by respondent, and said all that was necessary to be stated to give the jury a correct understanding of the law on the subject. The court

was not called upon, nor was it proper, to single out one or two isolated facts, and confine the jury to those particulars narrated, without notice of others that they might have thought important. In determining whether the respondent was guilty of contributory negligence, "the jury is bound to consider all the evidence and circumstances bearing upon the question, and not select one particular or prominent fact or circumstance as controlling the case to the exclusion of others." (*Railway Co. v. Ives,* 144 U. S. 433, 12 Sup. Ct. 679, 36 L. Ed. 485; *Leak v. Railway Co.,* 9 Utah 246, 33 Pac. 1045; Id., 163 U. S. 280, 16 Sup. Ct. 1020, 41 L. Ed. 160.) For the reason that the court fully covered the ground of contributory negligence in its charge to the jury, and for the reason that this request was too much upon the weight of the evidence, it was not error for the court to refuse it.

6. It is also contended that the court erred in refusing to give the italicized portion of the following request: "You are further charged that the mere fact that the accident has happened is not sufficient proof to charge the defendant with negligence. The burden of proving negligence rests on the party alleging it, and when a person charges negligence on the part of another as a cause of action he must prove the negligence by a preponderance of the evidence. *And in this case, if the jury finds that the weight of the evidence is in favor of the defendant, or that it is equally balanced, then the plaintiff cannot recover and you should find the issues for the defendant.*" From the portions of the charge already quoted, we think the substance of this request was given to the jury. It is conceded that the substance thereof was given, except the italicized portion. In addition to the charge already quoted the court said: "The burden of proof is upon the plaintiff in this case, and it is necessary, before he is entitled to a verdict at your hands, that he should establish by a preponderance of the evidence the allegations of his complaint"—stating them. The court further charged: "By a preponderance of the evidence is meant the greater weight of the evidence; that which is the more convincing as to its truth," etc. It many times has been said, and it has become

settled law, that it is sufficient if the jury were properly instructed in substance, and that the court need not adopt the form of language presented by counsel; but it may choose that form of language which it deems best adapted to intelligently state the law to the jury on the requested subject-matter. The jury here, having been expressly and affirmatively charged that the plaintiff, before he was entitled to a verdict, must establish his case, specifically enumerating the propositions, by a preponderance of the evidence, defined to them to be the greater weight of the evidence, we cannot see how the law on this subject would have been strengthened, or the rights of appellant better guarded, by also stating the law negatively to the jury as appellant requested. Where, as here, the court charged the jury that the burden of proof is upon the plaintiff to establish his case by a preponderance of the evidence, it is not required to give a request instructing them that, if the evidence is equally balanced, they should find for the defendant. (*International, etc., R. Co. v. Villareal* [Tex. Civ. App.], 82 S. W. 1063; *Harper v. State, etc.,* 101 Ind. 109.)

We are cited to the case of *Wells v. Construction Co.,* 27 Utah 524, 76 Pac. 560, in support of appellant's contention. That portion of the request, "that the mere fact that the accident has happened is not sufficient proof to charge the defendant with negligence," not given in the *Wells Case,* and the principal point under discussion in that case, was given in the case at bar. In that particular, the cases are unlike. Further, in the case at bar the court more fully and specifically charged the jury on the questions of burden of proof and preponderance of evidence than was done in the *Wells Case*; and in this particular the two cases are dissimilar. In the *Wells Case,* in effect, it was held that the substance of the request was not contained in the charge. In the case at bar we think the substance of the request is contained in the charge. We are, however, of the opinion that the particular portion of the request (the italicized portion) here not given, and complained of, under the issues as submitted to the jury, does not correctly state the law. Such a statement of law would be correct, where the case submitted to the jury con-

sists solely of issues upon the complaint; for then the burden of proof rests upon the plaintiff on all the issuable facts. But here there was an affirmative plea of contributory negligence which was an issuable fact, and, as such, was submitted to the jury, upon which, under the unanimous holding of this court, the burden of proof rested upon the appellant. The language of this portion of the request is open to the construction, and therefore objectionable, that plaintiff could recover only by having every point or issue found in his favor by the greater weight of evidence. In other words, if the evidence on the issue of contributory negligence was "equally balanced," plaintiff could not recover. We think the correct rule is that where the case as submitted to the jury does not consist solely of the issues upon the complaint, but also includes the affirmative issues raised by the defendant, it is not error for the court to refuse like requests. (*Richelieu Hotel Co. v. International, etc., Co.*, 140 Ill. 248, 29 N. E. 1044, 33 Am. St. Rep. 234; 1 Blashfield on Instructions, sec. 349.) It is true there is some force to the contention that this portion of the request relates alone to the preceding statement that the burden of proving negligence rests upon him who charged it, and, with such construction, it was not objectionable. But by the later phrase, "and in this case if the jury find," etc., they were liable to apply it to all the issuable facts, including the one of contributory negligence, and therefore it was misleading, and should not have been given. So far as the *Wells Case* is in conflict with the views herein expressed, it is overruled.

The judgment of the court below is therefore affirmed, with costs.

McCARTY, J., concurs.

BARTCH, C. J. (dissenting).

In my judgment this is a case where the plaintiff's own negligence was a proximate cause of the injury, and one in which no right of recovery has been shown to exist. The place or yard where the accident happened was level, and the

ground was solid. The engine was switching, and had passed
in front of the horses but a few minutes before, and was all
the while in plain view of the complainant. It is idle to say
that he was not aware it would be likely to come back shortly.
To the north, the direction in which the plaintiff had to go
with his load, the yard. was open, clear, and unobstructed.
Notwithstanding this condition of the yard, instead of turn-
ing his team, when the engine was but ninety feet away, to
the north, parallel with the railroad track, and driving it a
few steps on the way out of the yard, where he could have
tied on his load with undoubted safety, he heedlessly drove
his team toward the track on which the engine was standing,
moved the wagon but three feet from the car where he had
loaded, and then stepped into that narrow space, evidently
without paying the least attention to the engine, which was
in plain view of himself and colaborers. While in that posi-
tion, tying on his load, he was injured. It seems manifest
from the evidence that with the exercise of ordinary care he
could have performed his services with entire safety. His
injury resulted from his careless choice of a dangerous
method to perform a service, instead of a safe one equally
available. And the evidence fails to disclose any wanton or
willful negligence on the part of the defendant. Having a
few minutes previously passed in front of the horses without
frightening them the defendant's employees would naturally
conclude that they could again pass with safety, and, under
the circumstances, they were not bound to foresee the acci-
dent.

The emission of steam is a usual incident in the movement
of an engine which has been standing—a thing which the
plaintiff, as a man of ordinary understanding and familiar
with the operations in a railroad yard, must have known. It
does not appear that the escape of steam, in this instance,
was the result of a wanton or willful act of an employee. Nor
is it shown that any one of the employees of the defendant
was aware of the plaintiff's perilous position. Under these
circumstances, and from the evidence in the record, I am of
the opinion that the plaintiff has shown no liability on the

part of the defendant company. Nor do I agree with the application of some of the propositions of law in the opinion of the majority, nor in overruling the case of *Wells v. Utah Construction Company,* 27 Utah 524, 76 Pac. 560. That decision was made by a unanimous court, and is not in conflict with the authorities. That the plaintiff was guilty of contributory negligence is apparent from his own evidence as shown by the record, and therefore it was not incumbent upon the defendant, because of its plea in the answer, to also prove such negligence. In such case, where the plaintiff's own evidence shows him guilty of negligence at the time of the injury, the burden of proof is upon him to show, by a preponderance of the evidence, not by evidence equally balanced, the liability of the defendant.

A careful examination of the record convinces me that the action of the trial court in the premises was erroneous, and that this court ought to grant a new trial. I therefore dissent.