### KEECH v. ROME, O. & W. R. Co.

*(Supreme Court, General Term, Third Department.* February 4, 1891.)

RAILROAD COMPANIES—ACCIDENT AT CROSSING—NEGLIGENCE.

Plaintiff, in a buggy, approached by a converging road defendant's railroad crossing, occupied by cars, which were being shifted. The engine and cars moved down near to plaintiff and stopped. Plaintiff called out: "Is it all right so we can go ahead?" Defendant's servant on the engine replied: "All right; go ahead." Plaintiff moved forward, and, when abreast of the engine, steam began to escape from its "pop-whistle," and several "toots" of the whistle sounded, frightening plaintiff's horse, and causing it to spring sideways into a ditch, throwing plaintiff from the buggy, and breaking his leg. It appeared that the "pop-whistle" was not under control of the engineer. *Held* that, although there was no evidence of negligence in the operation of the engine, the assurance of safety was made to plaintiff without reservation, and implied the control of the engineer over the engine and its instruments of alarming sounds, and that defendant was liable for plaintiff's injuries received in acting upon that assurance.

Appeal from circuit court, St. Lawrence county.

Action by Milton Keech against the Rome, Ogdensburg & Watertown Railroad Company to recover damages alleged to have been sustained by plaintiff through defendant's negligence. On September 14, 1886, the plaintiff was riding in a buggy drawn by one horse, on the highway and approaching the grade crossing over the defendant's railroad just north of the station at De Kalb Junction. The highway and the railroad tracks south of the crossing lie side by side in converging lines. The plaintiff stopped about 360 feet south of the crossing, which was then occupied by cars that were being sorted and shifted by means of an engine. After waiting about 15 minutes, all the cars had been moved away from the crossing, and the engine backed southerly towards the plaintiff, and stopped on the track about 30 feet nearer the crossing than the plaintiff then was. The plaintiff then called out: "Is it all right so we can go ahead?" and some one on the engine replied: "All right; go ahead." The plaintiff moved forward, and, when his horse and buggy came abreast of the engine, being then about 40 feet from it and 250 feet from the crossing, the steam suddenly escaped from the "pop-whistle," stopped, went off again, then three "toots" of the whistle sounded, all in rapid succession. Steam escaped from the side of the engine, and partly enveloped the horse. At the first sound of the whistle the horse sprang sideways into the ditch, and plunged more with the successive noises. The plaintiff was thrown from the buggy, and his leg broken. It appeared that the pop-whistle worked automatically, and usually, when the engine stood still, and that the defendant had given orders to the men operating the engine not to try to control it. The "toots" of the whistle were signals that the engine was about to move. It did not appear that the escape of steam from the sides of the engine was controllable. The defendant moved for a nonsuit at the close of the plaintiff's testimony, and renewed the motion at the close of the whole testimony, upon the ground that no negligence on the part of defendant had been shown. Both motions were denied. The jury found for the plaintiff. Defendant appeals from the judgment for plaintiff entered on the verdict, and from an order denying a motion for a new trial.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Dart & Erwin,* (*W. A. Dart,* of counsel,) for appellant. *Conger & Orvis,* (*G. S. Conger,* of counsel,) for respondent.

LANDON, J. The learned trial judge in effect instructed the jury that there was no evidence tending to show any negligence of defendant's servants with respect to the engine, regard being had to its use, if considered independently of the representation to plaintiff that it was safe for him to go over the crossing; but that this representation to plaintiff, made by defendant's servants in charge of the engine, and upon which the plaintiff relied in proceeding to cross, imposed upon such servants the duty to refrain from so operating the engine as to make the crossing less safe than their representation led him to think it was. The learned judge said: "It was their duty, so far as they had control, to so manage the engine that it should not unnecessarily jeopardize the plaintiff, and that, if they blew the whistle just as he came opposite them, and it was unnecessary to do so under the circumstances,"—the jury might find that the defendant was liable. This instruction proceeds upon the theory that the defendant was not to be made liable because it made the noises and performed the operations incident to its business, but because, having given the plaintiff, who had waited some time to obtain it, an assurance of safety, it was its duty, if it was in its power, to refrain for the moment from unnecessarily doing any act to imperil his safety. This instruction appears to be reasonable, and is within the doctrine of *Borst* v. *Railroad Co.,* 4 Hun, 346; affirmed 66 N. Y. 639. The defendant contends that the defendant's servants did no improper act, and omitted no proper one. If the operations of the en-

gine were under their control they could have suppressed the "pop-whistle" and the "tooting" of the whistle. If the pop-whistle was not under control, but worked automatically, and was liable to go off whenever the engine stood still, these facts were known to the engineer. The plaintiff was not shown to know them. The question would then be whether it was negligence to stop the engine in advance of the plaintiff, instead of in his rear, and tell him to go ahead, without regard to the liability of the pop-whistle to go off. The assurance of safety was made without reservation, and implied, we think, the control of the engineer over his engine and its instruments of alarming sounds. We think the case was proper for the jury, and that the defendant has no ground to complain of the manner of its submission. The defendant's counsel contends that the fair meaning of the words, "All right; go ahead," was that the crossing was clear. We do not think the court could hold that that was its only meaning, or that the jury ought, under the circumstances, to have held so. There was slight cause to charge the plaintiff with contributory negligence, and the verdict cannot be disturbed upon that ground. The charge with respect to damages was carefully, and, we think, accurately, made. Judgment affirmed, with costs. All concur.