# Sloss-Sheffield Steel & Iron Company v. Redd.

## Injury to Servant.

(Decided December 19, 1912.  60 South. 468.)

1. *Master and Servant; Injury; Jury Question.*—It was a question for the jury under the evidence in this case whether or not the negligence of a person entrusted by the defendant employer with superintendence was the proximate cause of the injury to the plaintiff employee.

2. *Charge of Court; Directing Verdict; Question of Law or Fact.* —Where there is any evidence from which the jury as reasonable

men might reasonably arrive at different conclusions, or where there is a material conflict in the evidence, or where there is evidence affording inferences adverse to the right of the party requesting the charge to recover, it is a question for the jury, and the court should not direct the verdict.

3. *Bill of Exceptions; Construction.*—The bill of exception, is to be construed most strongly against the exceptor, and where a bill states that it contains all the evidence but contains other statements that admit of a different conclusion, it is to be construed unfavorably to the party .excepting.

4. *Same; Office.*—The office of a bill, of exceptions is to present to the appellate court data from which it may review questions raised on the trial not shown by the record proper, and a failure to set out the necessary evidence in a succinct and intelligent and narrative form does not meet the requirements.

5. *Appeal and Error; Review; Presumptions.*—Where the bill of exceptions does not set out all the evidence, the presumption will be indulged that there was evidence justifying the action of the trial court as the presumption is always in favor of the ruling of the trial court.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by G. W. Redd against the Sloss-Sheffield Steel & Iron Company for damages for injuries received while in its employ. Judgment for plaintiff and defendant appeals. Affirmed.

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant. The court erred in refusing the affirmative charge.—*Tabler v. Pioneer M. & M. Co.*, 52 South. 95; *M. & O. v. George*, 94 Ala. 218; *Bir. F. & M. Co. v. Gross*, 97 Ala. 255; *Ala. C. C. & I. Co. v. Hammond*, 156 Ala. 225.

HARSH, BEDDOW & FITTS, for appellee. Negligence may be imputed properly to the superintendent Meadows in giving the order to the deceased to go for the bolt in view of the conditions and surroundings among which he called for him to move.—*K. C. M. & B. v. Burton*, 97 Ala. 240; 163 Mass. 216; 173 Mass. 105; 155 Mass. 584; *T. C. I. & R. R. Co. v. Brown*, 164 Ala. 58; *Bessemer L.*

& I. Co. v. Campbell, 121 Ala. 50. The case was tried upon the first count and plaintiff was entitled to have the master respond in damages.—L. & N. v. Mothershed, 97 Ala. 261; Ala. Mid. v. Culver, 108 Ala. 330. There was no field for the giving of the affirmative charge.—Boozer v. Jones, 169 Ala. 481; Columbia M. & E. Co. v. Bingham, 169 Ala. 554; McCormack H. M. Co. v. Lowe, 151 Ala. 315.

PELHAM, J.—The suit brought by the appellee in the court below as administrator is to recover damages from the appellant for negligently causing the death of the plaintiff's intestate while an employee of the defendant company. The complaint contains several counts, but only the first count was submitted to the jury. That count is framed under subdivision 2 of the Employer's Liability Act (Code, § 3910), counting on the injury as having been occasioned by reason of the negligence of one Meadows, a person in the employment of the defendant having superintendence intrusted to him.

The only assignment of error rests upon the refusal of the trial court to give the general charge for the defendant on the first count of the complaint.

The evidence without conflict shows that the plaintiff's intestate received the injuries which resulted in his death while engaged in the performance of the duties of his employment, in obeying an order of his immediate superior, Meadows, a person having intrusted to him the superintendence of the plaintiff's intestate and being charged with the control of the work at which he was employed. The plaintiff's intestate was in the employ of the defendant company as a helper for Meadows, who was the person intrusted with superintendence in the performance of the woodworking part of certain repair work being done upon the defendant's coal washer.

That part of the plant of the defendant company where the injury occurred was undergoing repairs and a new conveyor being installed on a platform or elevated landing about 30 or 40 feet above the ground. An iron shafting ran along parallel with and on top of the floor of the platform about six or eight inches above the floor of the platform, and this shafting was connected by open, uncovered cogwheels with the elevator, and all of these pieces of machinery constituted part of the machinery used in the operation of the defendant's coal wash-- er. The plaintiff's intestate received the injuries from which he died by being caught in the revolving cogwheels.

The work being done on the coal washer at the time the plaintiff's intestate received his injury was not a service performed in connection with the regular operation of the plant, but in connection with repair work, and the machinery operating the coal washer was kept in motion, and the regular work of the plant was carried on during the progress of this repair work. A piece of sheet iron about 18 inches wide by 8 to 10 feet long had been placed diagonally across the shafting connected with the machinery, and but a few feet from the unprotected cogwheels operating the elevator. This piece of sheet iron had been placed in this position to enable employees engaged in the repair work to go upon it in attending to their duties in and about making the repairs, and had been used for this purpose during the two days which the repair work had been in progress before the injuries occurred.

The floor of the platform had quantities of grease and oil upon it, and rubbish and material that was being used in the work "was scattered all around the floor space." The ends of the sheet iron over the shafting were resting for a support on this rubbish and loose timbers placed on the elevated platform floor. The shafting under the

sheet iron plate was revolving and a slight vibratory motion was imparted to the plate, The entire structure, including the floor or elevated platform where the employees were engaged at labor on the repairs, vibrated to some extent when the machinery of the coal washer was in motion. All of these physical conditions were existing at the time the order was given that is complained of as having been negligently given, and were shown to have been known, or by ordinary diligence able to have been known, to the superintendent who gave the order to the plaintiff's intestate.

The order given to the plaintiff's intestate as a helper by his superior, intrusted with superintendence, was to get a certain kind of bolt to be used in connection with the repair work in charge of Meadows, and the bolts were kept in one place, so that to comply with this order and get the bolt it was necessary for the plaintiff's intestate to go downstairs from the place where he was standing on the piece of sheet iron, at a distance of about four feet from the revolving cogwheels. When he started after the bolt in obedience to the orders of his superior, intrusted with his superintendence, he slipped or fell into the cogs. and received the injuries complained of, which resulted in his death.

Although two or more eyewitnesses, close to the scene of the accident, were looking directly at the plaintiff's intestate when he received his injuries, it is not positively or definitely shown by the evidence of these two witnesses, or by any other testimony set out in the bill of exceptions, just how or what caused the injured party to get entangled in the cogwheels. At least two of the witnesses examined on the trial testified that they were looking directly at the plaintiff's intestate during the time he was endeavoring to perform this service in obe-

dience to the order of Meadows, but state that they could not exactly designate just what caused him to get caught in the cogwheels. One of them, who was but a few feet away and looking in that direction, stated that the plaintiff's intestate was about four feet from the revolving cogwheels as he started towards him (the witness) in going after the bolt, and that "he slipped in some way, or stepped on something, and fell"; but further along in the testimony of this same witness he states that he could not tell just how the boy got caught in the wheels —that he was not looking at his feet, and that he did not know whether he was undertaking to make a step or not at the time.

While it may be, and probably is, true, as contended by counsel for appellant, that there is no direct or positive evidence of any negligence on the part of the person intrusted with superintendence, yet it was open for the jury to infer such negligence from the tendencies of the evidence showing all the facts and circumstances of the injury, and to find that the injury resulted as a proximate consequence of the negligence of such person whilst in the exercise of superintendence, and hence the court properly refused to give the defendant the affirmative charge on this count; for it seems to us that the evidence showing the plaintiff's intestate to have received the injury in the manner related by the witnesses, taken in connection with the existing attendant conditions that were known or by ordinary diligence could have been known to the superintendent giving the order, affords an inference of negligence attributable to such person having such superintendence intrusted to him that could have reasonably been drawn by the jury, and this made it the duty of the court to submit, as it did, the question of the defendant's liability, under the allegations of the first count of the complaint, to the jury. To hold other-

wise would be to say as a matter of law that the super-intendent having superintendence over the plaintiff's intestate, as well as the place where his services were to be performed and the conditions under which they were to be performed, was not negligent in requiring the service and giving the order under the circumstances shown by the facts in this case, which it seems to us afford a reasonable inference to the contrary.

The general charge should never be given where there is any evidence from which the jury might justifiably arrive at a contrary conclusion (*Culver, Adm'r, v. Ala. Midland Ry. Co.,* 108 Ala. 330, 335, 18 South. 827), and, as has been said by the Supreme Court in the case of *McCormack Harvesting Machine Co. v. Lowe,* 151 Ala. 313: "The rule is well settled by this court that the affirmative charge should never be given when there is a material conflict in the evidence, or when there is evidence affording an inference adverse to the right of recovery by the party requesting the charge."—See, also, *Garren v. Fields,* 131 Ala. 394, 30 South. 775; *Columbia M. & E. Co. v. Bingham,* 169 Ala. 554, 53 South. 995; *Boozer v. Jones,* 169 Ala. 481, 53 South. 1018.

Appellant's counsel insist that the evidence entirely fails to show that the shafting over which the piece of sheet iron was placed was in motion at the time of the accident. In this counsel are mistaken. The shafting is shown by the evidence to have been connected up with the washer machinery and it was the revolving cogwheels of this machinery running the elevator that injured the plaintiff's intestate, and, besides, the witness Payne directly testified that "the shaft was revolving."

It is asserted by a statement in the bill of exceptions that it contains all of the evidence, but it is self-contradictory on this point and contains striking and positive inherent proof to the contrary. It internally ap-

pears from the bill itself that there was a great deal of
material testimony before the trial court that is not be-
fore this court. The witnesses are shown to have been
examined on a plat or diagram of the place where the
injury occurred, and the bill of exceptions contains a
mass of testimony of both the plaintiff's and the de-
fendant's witnesses on both direct and cross examina-
tion, of which the following is a fair example: "There
(indicating) are shafts, and those two are cogs at the
end of the shaft. * * * This drawing about correctly
represents the coal washer. This part represents the
shed that I testified about that covers a belt. There is
a belt running through here. * * * If you stand on the
floor, this shed would be up like this (indicating). The
belt runs along this way. This represents the two cogs.
This is the shafting. * * * Before Mr. Meadows told
Mr. Redd to get the bolt, Mr. Meadows was up there
somewhere about where the cross is (indicating on the
diagram). * * * Right in there (indicating) is where his
feet went. * * * (Indicating on diagram) In here. * * *
I was right along there (indicating on diagram). * * *
Some of the lumber and stuff was piled in there (indi-
cating on diagram). * * * This was the highest place
in the shed, and it pitched back this way (indicating
on diagram)."

The only intelligence conveyed to us, by these and like
statements set out in the bill of exceptions as the evi-
dence of the different witnesses, is that there was much
material evidence before the trial court that is not pre-
sented to this court in reviewing the action of the pri-
mary tribunal. The plat or diagram, which seems to
have been almost constantly used in the examination of
the witnesses, is not incorporated in the bill of excep-
tions.

This court has held, in the case of *Hunnicutt Lumber Co. v. M. & O. R. R. Co.*, 2 Ala. App. 436, 57 South. 73, applying the rule that a bill of exceptions is to be construed most strongly against the party excepting, that, notwithstanding a bill states in so many words that it contains all the evidence, yet, if the bill contains other statements affording a reasonable inference that admits of a different conclusion, that construction unfavorable to the party excepting will be adopted.

We have made rather extended comment on the bill in this case, for the purpose of calling attention to this growing evil and to sound a note of warning as a precaution against this loose method in the preparation of bills of exceptions. The office of a bill of exceptions, in so far as it is concerned with setting out the evidence of witnesses, is to present to the appellate court the necessary evidence to afford that court the data from which to review the questions raised. To properly serve this purpose and not incumber the court with useless work, the necessary evidence should be set out in succinct, intelligent narrative form, and anything short of this is not a compliance with the rules adopted by this court. Evidence set out in the manner that much of it is stated in this bill as framed not only shows that the bill does not contain all of the evidence, but makes it impossible to intelligently consider and review that part of the evidence set out in such a way as to amount to no more in this connection than a meaningless jumble of words.

A careful examination of the evidence as best we could under the conditions referred to as shown by the bill of exceptions, shows no error, in our opinion, in the court's refusal to give the general charge for the defendant. Moreover, an affirmance of the case must necessarily follow because of the presumption to be indulged

in favor of the rulings of the trial court when the bill of exceptions fails to contain all of the evidence.

Affirmed.