# Boan v. W. T. Smith Lumber Co.

## Damage for Frightening Animal.

(Decided November 13, 1913. ·63 South. 564.)

1.. *Railroads; Crossings; Lookout.*—Trainmen operating trains must keep a lookout at public road crossings, but are not bound to do so at private road crossings.

2. *Same; Frightening Animal; Jury Question.*—The evidence examined and held to make it a jury question whether those operating the train on the occasion specified were negligent as alleged, after seeing the peril of plaintiff, thereby causing the fright and consequent injury.

3. *Same; Contributory Negligence.*—Where the action was for frightening animals at a highway crossing special pleas alleging that when plaintiff heard the locomotive coming she alighted from her vehicle and took hold of the bridle and was standing, holding the same when the locomotive approached, and when the mule became frightened and ran, she continued to hold on to the bridle, and allowed the mule to throw her down and injure her, and that her failure to let go of the bridle proximately caused the injury, did not sufficiently allege contributory negligence.

4. *Same; Evidence.*—Where the complaint alleged ordinary gentleness, it was competent, in an action for frightening an animal at a crossing, to show that the mule which ran and injured plaintiff was of ordinary gentleness.

5. *Same.*—It was not competent for the engineer or trainman to testify that they had no intention of frightening the mule by blowing off steam, etc.; but they could testify that no unusual or unnecessary noises were made at the time, they being experts as to such facts, and testifying from personal knowledge.

6. *Same; Frightening Animal.*—A railroad company is not liable for injuries from frightening animals on highways by noises which are incident to the movement of trains, such as the escape of steam and the rattling of cars; but are liable· if the employees wantonly or maliciously used the signal appliances or so discharged steam as to frighten animals.

7. *Pleading; Conclusion.*—An allegation of a plea that plaintiff's failure to release her hold on the bridle of her mule caused her to sustain the injuries complained of. was the mere conclusion of the pleader, no facts being alleged to sustain such conclusion.

APPEAL from Crenshaw Circuit Court.

Heard before Hon. A. E. GAMBLE.

Action by Talula Boan against the W. T. Smith Lumber Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The complaint contained only one count, the substance of which is stated in the opinion. It was afterwards amended by adding counts 2 and 3, which were in all respects similar to the counts held good in *Fulton's·Case,* 144 Ala. 340, 39 South. 282. The special pleas referred to are as follows:

"(3) Defendant says that plaintiff, when she heard defendant's locomotive and train of cars coming on said railroad in the direction of where she was, alighted from the vehicle and took hold of the bridle of said mule, and was standing holding the same when defendant's locomotive and train of cars approached, and that when said mule became frightened and started to run she continued to hold to said bridle and allowed the said mule to throw her down and injure her. And defendants aver that, by plaintiff's failure to release her hold on said bridle, she sustained the injuries complained of.

"(4) That plaintiff, when she heard and saw defendant's locomotive and train of cars coming in the direction of where she was, as alleged in her complaint, alighted from the vehicle and caught hold of the bridle on said mule and was standing holding the same when defendant's locomotive and train of cars approached, and when said mule became frightened and started to run, as alleged in said complaint, plaintiff continued to hold to said bridle on said mule and allowed said mule to throw her down and injure her; and defendant avers that by plaintiff's failure to release her hold on said bridle she sustained the injuries complained of."

Numerous grounds of demurrers were filed to these pleas setting up reasons why the pleas were not good as pleas of contributory negligence.

M. W. RUSHTON, for appellant. The court erred in overruling demurrers to the pleas of contributory negligence.—*Thompson v. Duncan*, 76 Ala. 334; *K. C. M. & B. v. Lackey*, 114 Ala. 152; *Bir. Ry. v. City Stables*, 119 Ala. 615; *Ala. Mid. v. Johnson*, 123 Ala. 197; *M. & C. v. Martin*, 131 Ala. 269; *So. Ry. v. Shelton*, 136 Ala. 191. Witnesses should state what they did and should not be permitted to draw conclusions.—*Tanner v. L. & N.*, 60 Ala. 643; *Wes. Ry. v. Cleghorn*, 143 Ala. 398; *Lawrence v. Ala. S. L. Co.*, 144 Ala. 524. On these authorities, it is insisted that the court erred in its rulings on the evidence, and in the charges given.

FRANK B. BRICKEN, for appellee. The line of inquiry pursued as to the trainmen elicited competent evidence, and the court was not in error in its rulings thereon.—*Oxford L. L. Co. v. Steadham*, 101 Ala. 380. The law of this case is well settled and the rights of the parties well defined, and under the authorities, there was no actionable negligence shown.—*Stanton v. L. & N.*, 91 Ala. 382; *Oxford L. L. Co. v. Steadham, supra; Levin v. M. & C.*, 109 Ala. 332; *L. & N. v. Lee*, 136 Ala. 182; *C. of Ga. v. Fuller*, 164 Ala. 196. This being true, defendant was entitled to the affirmative charge, and any error as to the pleadings or the evidence was necessarily error without injury.

MAYFIELD, J.—Appellant sued appellee to recover damages for personal injuries alleged to have been proximately caused by the negligence of defendant's servants or agents in charge of one of its steam locomo-

tives. The negligence alleged was in causing the locomotive to make unnecessary noise by ringing the bell, blowing the whistle, or emitting steam, thereby frightening plaintiff's mule, which was alleged to be of ordinary gentleness, and causing it to run away and to injure plaintiff by jerking her down, stepping upon her, and running a buggy over her. The complaint was evidently modeled after the counts held good in *Fulton's Case*, 144 Ala. 340, 39 South. 282. The facts in the *Fulton Case* and those in this case are very similar. One difference, in favor of the plaintiff in this case, was that she was in a public road when her mule was frightened, while Fulton was in a private road.

The difference is on account of the duty of trainmen to keep a lookout as to public roads, while no such duty attaches as to private roads. This was pointed out in *Fulton's Case*.

The plaintiff testified in part as follows:

"When I first saw the engine I don't suppose it was more than 50 or 75 yards from me. As soon as I saw it I got out of the buggy and held the mule till my daughter could get out and take out my—time I got off and my daughter got off—she just barely had time to get off my baby child, and they taken to ringing the bell and that didn't seem to frighten the mule and they blew the whistle and she threw up her ears but she didn't seem to be much frightened and they puffed off a puff of steam and that frightened the mule. It nearabout covered us. Yes, sir; they blew the whistle and rang the bell. Yes, sir; there was a great amount of steam escaping from the engine right there; that's when she run away and drug me down and run over me with the buggy and carried the buggy over me. The steam almost covered the mule and myself up. The railroad along there was on top of the ground about level with

the public road.  The public road was not in a cut; it was on level ground.  The railroad track, where the engine was, was about 15 feet from where the mule and myself were.  No, sir; they did not stop the engine.  There was no obstruction at all between me and the engineer of the train; nothing at all; it was a plain open old field.  Yes, sir; there was as many as two or three looking right at me.  Yes, sir; the engineer was right there looking at me.  No, sir; there was not a thing to keep them from seeing me."

This evidence, in connection with the other evidence, much of which was without dispute, that the mule was of oridnary gentleness, and that it was frightened and ran away and injured the plaintiff, as alleged, was sufficient to carry the case to the jury, notwithstanding the servants in charge of the locomotive denied all acts of negligence or wantonness, as in causing unnecessary noise and in seeing the peril of the plaintiff.  The trial court therefore erred in instructing the jury, if they believed the evidence, to find for the defendant, unless the charge can be justified under the special pleas, upon the theory that they were proven without dispute.

We are of the opinion that special pleas 3 and 4 were proven without dispute; and it was probably upon this theory that the trial court directed a verdict for the defendant or, more accurately speaking, gave the affirmative charge, with the usual hypothesis, for the defendant.  For this reason it was not error to give the affirmative charge requested by the defendant; but the charge could not be given upon the theory that there was not sufficient evidence to carry the case to the jury on the plea of the general issue

The special pleas 3 and 4 were demurred to by the plaintiff, and the demurrer was overruled.  In this we think there was error.  These pleas were wholly insuffi-

cient, under our rule as to pleas of contributory negligence. If it can be said they are not pleas of contributory negligence, then clearly they show no facts which, if true, will bar or defeat the action set up in the complaint. They do not deny any averments in the complaint, nor do they confess them and avoid them. The facts set up in the pleas are not inconsistent with the . facts averred in the complaint. They are, in truth, the same facts necessarily inferred from the allegations in the complaint.

It is true that the last sentence in the pleas is not averred in the complaint, but that is a mere conclusion of the pleader. Facts sufficient are not averred to justify the conclusion of the pleader. Of course if the plaintiff had not atempted to hold the mule she would not have been injured; but it is not averred that she was guilty of negligence in attempting to hold the mule. So far as the facts averred show, plaintiff did nothing that any other prudent person would not have done under like circumstances. It may be that she held on to the bridle after she knew it was useless so to do, and that she was thereafter injured on account of her own negligence in so doing, and not on account of the negligence of the defendant's servants, as alleged; or it may be that her own negligence proximately contributed to her injury; but, if so, the facts to show it should be alleged.

If the plaintiff had remained in the buggy she would not have been injured; but no one can say she was guilty of negligence in not remaining. If she had not attempted to hold the mule, and it had run away and injured the buggy, she might have been guilty of negligence in not attempting to hold it. No facts are alleged in the pleas which show that plaintiff did anything that a reasonably prudent person, situated as plaintiff

was situated, would not have done. In other words, no negligence or lack of care is shown by the pleas. Every fact alleged in the pleas may be true and the plaintiff still be entitled to recover. For these reasons the pleas were bad. The defects were pointed out by the demurrer, and the trial court should have sustained it as to these pleas.

The trial court also erred in declining to allow the plaintiff to prove that the mule frightened was a mule of ordinary gentleness. This was averred in the complaint and was therefore material, and plaintiff should have been allowed to prove it, if she could do so.

The court also erred in allowing the engineer to testify that he had no idea or intention of frightening the mule. This was allowing the witness to testify as to his secret intentions, which is not permissible under the long-established rules of evidence in this state.

The trial court properly allowed the engineer and the fireman and other persons on the train to testify that no unusual or unnecessary noises were made on the occasion in question, and that the noises made were usual and such as circumstances rendered necessary. The witnesses were experts in the line of business and were present on the occasion and testified from a personal knowledge of the facts and conditions. The plaintiff, by cross-examination, could have brought out all the facts not brought out on the direct examination. The defendant certainly had a right to show that the noise on the occasion complained of was not unusual or unnecessary; and we know of no better way to do so than to take the course pursued on this trial; e. g., to examine the engineer and the fireman who are alleged to have caused the unusual and unnecessary noise. After stating what they did, and what they omitted to do, on the occasion, it was proper to ask them if the noise

[Boan v. W. T. Smith Lumber Co.]

made was unusual or unnecessary, because this was the
gist of the cause of action. If no more noise, nor other
kind of noise, was made than that necessary to the
proper operation of the train, then the defendant was
not liable, even though the mule was frightened by the
noise and in consequence thereof injured the plain-
tiff.

The law on the subject has been thus stated or quot-
ed by this court (*Stanton v. Louisville & N. R. Co.*, 91
Ala. 386, 8 South. 799) : "The authority to operate a
railroad includes the right to make the noise incident
to the movement and working of its engines, as in the
escape of steam and the rattling of cars, and also to
give the usual and proper admonitions of danger, as in
the sounding of whistles and the ringing of bells. It is
not liable for injuries occasioned by horses, when being
driven on the highway, taking fright at noises occa-
sioned by the lawful and reasonable exercise of these
rights and duties. But if the acts of the servants occa-
sioning the fright are wanton and malicious and are
done in the discharge of their business by using the ap-
pliances of the company, such as wanton whistling of
the engine and the reckless discharge of steam, the com-
pany will be held liable.—1 Rorer on Railroads, 704;
Pierce on Railroads, 348. In the case of *Whitney v.
Maine Central R. R. Co.*, 69 Me. 208, the law was de-
clared in the following terms: 'A traveler upon the
highway, and a railroad corporation with their trains,
in approaching a crossing are each bound to use their
privilege with such reasonable precaution, prudence,
and actual diligence as to enable the one to cross in
safety to the other, and the corporation has the right
to make all reasonable and usual noises incident to
running their trains.' It is the duty of trains, nearing

a public crossing, to make such signals to warn persons approaching the track that they may stop at a safe distance.—Code, § 1144. In the case of *Phil., Wil. & Balt. R. R. Co. v. Stinger,* in commenting on the facts, the court stated that: 'When a man drives an unbroken or vicious horse, or one that is easily frightened by a locomotive, along a public road running side by side with a railroad, and liable to be met or overtaken by a train, he does so at his own risk. The railroad had as high a right to move their trains upon their road as the plaintiff had to drive his horse along a public road. But were bound to the exercise of care in accordance with the circumstances of the case.' In the case just cited there was some evidence tending to show an unnecessary blowing of the whistle; and it was held to be proper to leave the jury to determine whether the whistle was used in such a wanton manner as to amount to negligence.—78 Pa. 226."

The following is the statement of the law on this subject by Mr. Wood, in his work on Railroads, vol. 2 (Minor's Ed. 1894) p. 1550: "For an injury resulting from the frightening of a horse in the proper operation of a railway, no damages are recoverable; but when an engine is managed in such a reckless and negligent manner as to frighten horses, and cause them to run away, the company is liable for the consequences, as, where the engineer suddenly discharges a jet of steam near a passing team, or allows the steam to escape at a highway crossing, or near a highway, making a great noise, when teams are approaching, especially when it is not necessary  The company, in the absence of statutory regulations, is limited to a reasonable use of signals, and the blowing of a whistle near a crossing, or while running along a highway, unnecessarily fright-

ening teams and causing them to run away, is actionable negligence. * * * In such cases, however, as in others, the contributory negligence of the plaintiff is a bar to an action by him. He is bound to use ordinary care to prevent harmful results flowing from the defendant's wrongful act or to render the injury as light as possible. Because of the absolute necessity for more stringent rules in the protection of life and property against the perils of the steam engine with its capacity for mischief, the common-law rule that the master is not liable for the tortious acts of his servant committed without the scope of his employment does not apply to railway companies."

What was said in conclusion in *Fulton's Case,* 144 Ala. 332, 39 South. 282, is appropriate to the case at bar: "There was evidence tending to show that the trainmen were negligent after discovering the fright of the mule, and from which the jury might have found that the injury resulted from such negligence, but there was also evidence to the contrary; and that issue was for the jury. There was also evidence tending to show that the trainmen, after becoming aware of the presence of the mule with plaintiff in the vehicle to which it was hitched, and before there were any indications of fright in the mule, caused the engine to omit (emit) unusual and unnecessary noises calculated to frighten a mule of ordinary gentleness, and which did frighten this mule and cause the injury complained of. Upon this it was open to the jury to find for plaintiff, though there was no pretermission of duty on the part of the trainmen after the mule became frightened, but there was evidence to the contrary, and this too was an issue for the jury. It follows that the court properly refused to give the affirmative charge requested by the defendant."

For the errors pointed out the judgment is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.