[Louisville & Nashville ·R. R. Co. v. Jenkins.]

# Louisville & Nashville R. R. Co. *v.* Jenkins.

### Frightening Animal.

### (Decided May 18, 1916.   72 South. 68.)

1. **Trial; Directing Verdict.**—If, when plaintiff has introduced all his evidence, it does not tend to prove his cause of action, the court may refuse to hear evidence from defendant, but it is only in the absence of all evidence against defendant that the court should direct a verdict; if there be any evidence tending to establish plaintiff's case, the court should not withdraw the cause from the jury.

2. **Railroads; Frightening Animals.**—Where the negligent act of a railroad's servant in operating its train was a continuing contributing cause to frightening plaintiff's mule, resulting in injury to plaintiff, he has a cause of action against the railroad.

3. **Appeal and Error; Specification of Evidence.**—Where the distance indicated by witness was such as "from here to the jury box" or "from here to the spittoon" they should have been given more specifically in the bill of exceptions, since they might involve a contradiction; the bill reciting that it contained all the evidence.

4. **Railroads; Frightening Animals.**—The general rule is that for an injury resulting from the frightening of a horse in the proper operation of a train, or other instrumentalities of a railway, no damages are recoverable, but where an engine is managed in such a reckless and negligent manner as to frighten a horse and cause it to run away, the company is liable for the consequences; such as where the engineer suddenly discharges a jet of steam near a passing team, or allows the steam to escape at a crossing or near a highway, making a great noise, when teams are approaching, especially when it is unnecessry.

5. **Same; Jury Question.**—Questions whether the road's agent in charge of the engine which is alleged to have frightened plaintiff's mule, saw plaintiff and the frightened mule which he was trying to drive or control, was for the jury under the evidence.

6. **Same.**—Whether defendant's agent operating the engine, if he became aware of plaintiff's presence driving the frightened mule, under the circumstances of the place, and of the situation, exercised due care not to frighten, or not to increase the fright of the mule, was a question for the jury under the evidence.

7. **Witnesses; Competency; Knowledge.**—The testimony of a physician that he believed he treated plaintiff for hernia last spring, and believed he remembered plaintiff telling him that it was bothering him some, was properly received.

8. **Evidence; Competency.**—Where plaintiff had testified that steam was coming from the cylinder cock, and the witness had explained how the steam escaped through such cylinder cock, and there was evidence from which the jury might infer that the engineer knew of plaintiff's nearness and peril, the witness was properly allowed to answer the hypothetical question if an en-

# ERRATA

Page 14, line 14 from top, for "they" read "there".

Page 46, line 5 of syllabus 1, for "action" read "section".

Page 47, line 21 from bottom for "Steel" read "Steed".

Page 62, bottom line, insert comma for period after "care".

Page 587, second line of title of case of *Wise* v. *Hinegardner*, "Ded'd" should read "Dec'd".

Page 600, line 18 from bottom, omit comma after "trustee".

Page 600, line 13 from bottom, omit comma after "wife".

Page 681, line 9 from top, "ccorporation" should read "corporation".

Page 684, line 8 from bottom, "interester" should read "interested".

Page 695, title of case "*State ex el.*" should read "*State ex rel*".

[Louisville & Nashville R. R. Co. v. Jenkins.]

gine was running along a railroad parallel with the highway, and on meeting a party coming in the opposite direction the cylinder cocks were open and the steam escaping out on the road, how long would it take the engineer to cut off steam until the engine had passed.

9. **Railroads; Frightening Animals; Instructions.**—Although a railroad has the right to operate its trains along its tracks parallel with a highway in the usual manner, and with the usual and customary noises, without liability to a driver of an animal frightened thereby, yet if the peril of the driver was apparent to the agent of the road in charge of the engine, such agent owed the driver the duty to shut off unnecessary escaping steam at the cylinder cocks, to allay the fright of the animal, when it could have been instantaneously done without interfering with the operation of the train.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by J. C. Jenkins against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from the Court of Appeals under Act of April 18, 1911 (Laws 1911, p. 449), § 6. Affirmed.

The facts sufficiently appear. The defendant objected to the following evidence and moved to exclude it: Dr. Hays, testifying said: "I believe I treated Jenkins for rupture last spring. I believe I remember him telling me it was bothering him some."

The following question was asked witness Buell: "If an engine was running up along the railroad parallel with the public highway, and should meet a party traveling along that road going in an opposite direction meeting the engine, and the cylinder cocks were open, and steam escaping out on the road, how long would it take the engineer to cut off steam until the engine had passed the party?"

The following is charge 1 refused to defendant: "The court charges the jury that defendant had the right to use its track, and to make all the usual noises incident to the running and moving of trains; and, if you believe from the evidence that nothing but this was done by defendant's agents and servants, then, even if plaintiff's mule did run away and hurt him, your verdict must be for defendant.

GEO. H. PARKER, and EYSTER & EYSTER, for appellant. A. A. GRIFFITH, and CALLAHAN & HARRIS, for appellee.

THOMAS, J.—The bill of exceptions is established in this cause pursuant to appellant's motion to that end. The case was

[Louisville & Nashville R. R. Co. v. Jenkins.]

tried on two counts of the complaint. The first count charges simple negligence on the part of defendant's agents or servants, acting within the scope of their employment, whilst engaged in the operation of one of defendant's trains, in that, while plaintiff was on a public highway a short distance north of Garden City, "the agents and servants of the defendant in charge of said locomotive so negligently conducted themselves in and about the operation and handling of said locomotive" that as a proximate consequence thereof plaintiff's mule was caused to run away, and so inflict plaintiff's injury. The second count alleges negligence on the part of defendant's agents and servants in and about the operation of said engine, leading to the result that plaintiff's mule became frightened and was caused to run away; and that as a proximate consequence of this negligence in the handling and operating of said locomotive plaintiff was caused to sustain the injuries complained of. The defendant pleaded not guilty, offered no evidence on the trial, and requested the affirmative charge which the court refused.

(1) Where the plaintiff has introduced his evidence, and it does not tend to prove the cause of action, the court may refuse to hear the evidence of the defendant; but it is only in the absence of all evidence against the defendant that the court should direct a verdict. If there be any evidence which tends to establish the plaintiff's case, the court should not withdraw the cause from the jury.—*Tobler v. Pioneer M. & M. Co.*, 166 Ala. 517, 52 South. 86; *McCormack Co. v. Lowe*, 151 Ala. 313, 44 South. 47; *M. J. & K. C. R. R. Co. v. Bromberg*, 141 Ala. 258, 37 South. 395; *Shipp, et al. v. Shelton*, 193 Ala. 658, 69 South. 102; *Amerson v. Corona, etc., Co.*, 194 Ala. 175, 69 South. 601; *Holmes v. Bloch, infra.*, 71 South. 670.

(2) If, as a continuing contributing cause, the negligent act of defendant's agent and servant, in the manner alleged in the complaint, proximately resulted in plaintiff's said injuries, a recovery may be had.

The plaintiff's evidence tended to show that as he was driving a mule to a buggy, southward along the public road to Garden City, the mule became frightened by a freight train approaching from the rear, and passing; that the mule was "jumping around," "getting scared," becoming "frightened," but witness was "managing to hold him in the road," when defendant's engine, coming from the south, met driver and mule in close

proximity, "squirting" and puffing steam towards the road and mule, causing the mule to run away, and thereby inflict injuries on the plaintiff, among them a rupture—inguinal hernia. The evidence further shows that the public road along which plaintiff was traveling, and where the "runaway" occurred, was parallel with defendant's railroad and very close thereto, one of the two eye witnesses indicating the distance between plaintiff and the ties by the expression, "there was just a ditch there, some few feet," and the other witness stating that the road was as close to the railroad track "as from here to the jury box, * * * the public road comes pretty close to the railroad track, as close as from here to the spittoon," and stating that there was a high perpendicular wall on the west side of the public road, and the railroad on the east side of it, with barely a driveway along there.

The evidence as to the conduct of the defendant in the operation of the engine just before, and at the time of passing, as given by the witness, was that the engine was making noise, that steam was puffing from around the cylinder, at the head of the engine, and coming out of the cylinder cocks, and puffing out towards the road as the engine approached Mr. Jenkins and the mule; that "the engineer could have seen him all right. It was a plain, open way. The public road runs right by the railroad, parallel, as close as from here to that spittoon."

On cross-examination one witness stated that the engine was working just steam enough to pull out of the switch, that it was puffing as it started, like it always does, and not making any unusual noise, and was "squirting steam out toward the road and toward the mule." And on further cross-examination this witness said that: "The mule and engine met, just about the time the steam was puffing out, met, and the engine got a little above it, that is, past the mule about 20 yards, when it commenced to emit that steam."

The evidence showed that a man was on the west side of the engine, with his head out of the window, looking westward or northwestward; that there was nothing to obstruct his view to where plaintiff and the frightened mule were.

An experienced engineer testified to the effect that at the end of each cylinder of an engine, where the team escapes, is what is called a "cylinder cock," on the bottom of the cylinder; from there there runs to the cab of the engine a rod by means of which

the cocks may be instantly opened or closed; they are opened to let out of the cylinder the water condensed from the steam; and it is not essential to the operation of the engine to have the cylinder cocks open all the time for the escape of water and steam.

(3) This court can hardly know, as did the trial court, how close to the engine Mr. Jenkins and his mule were, as was to be gathered from such expressions as "from here to the jury box," "to the spittoon," etc. The indicated distances should have been given more specifically in the bill of exceptions. Such references to the locus in quo might involve a contradiction in a bill of exceptions reciting that it contains all the evidence.—*Ala. T. R. Co. v. Benns*, 189 Ala. 590, 66 South. 589; *Warble v. Sulzberger Co. of America*, 185 Ala. 603, 64 South. 361; *Sloss-Sheffield S. & I. Co. v. Redd*, 6 Ala. App. 404, 60 South. 468; *Continental Gin Co. v. Milbrat*, 10 Ala. App. 351, 65 South. 424. However, as we have pointed out, these expressions of proximity to the engine (a very important fact under the allegations of each count) have some explanation in the description of the place with the perpendicular embankment on the west of the public road and the ditch and the railroad on the east side, and in the statement of the witness that: "Between me and the ties (meaning, of course, the cross-ties of the railroad) there was just a ditch there—some few feet."

(4, 5) We will therefore consider the action of the trial court in declining to give the affirmative charge requested by defendant.

Did the defendant, under the circumstances of time, place, and the reasonable appearance of fright in the mule (if in fact defendant's agent operating the engine observed the fright) owe the duty to the plaintiff to so operate the engine as not to increase the panic, or as to allay the panic, of the animal, provided this could be done consistently with the due operation of the engine and train?

Mr. Wood, in his work on Railroads (volume 2, p. 324), thus states the general rule as to frightening teams: "For an injury resulting from the frightening of a horse in the proper operation of a railway, no damages are recoverable; but when an engine is managed in such a reckless and negligent manner as to frighten horses, and cause them to run away, the company is liable for the consequences—as, where the engineer suddenly discharges a

jet of steam near a passing team, or allows the steam to escape at a highway crossing, or near a highway, making a great noise, when teams are approaching, especially when it is necessary."— *Stamm v. Sou. R. Co.*, 1 Abb. N. C. (N. Y.) 438; *Presby v. Grand Trunk R. Co.*, 66 N. H. 615, 22 Atl. 554; *Louisville, etc., R. Co. v. Schmidt*, 81 Ind. 264; *Statt v. Grand Trunk*, 24 U. C. C. P., 347; *Gibson v. St. Louis, etc., R. Co.*, 8 Mo. App. 488; *Indianapolis, etc., R. Co. v. Boettcher*, 131 Ind. 82, 28 N. E. 551.

See, also, *Paine v. City of Rochester*, 59 Hun. 627, 14 N. Y. Supp. 180; *Keech v. Rome, etc., R. Co.*, 59 Hun. 617, 13 N. Y. Supp. 149; *Harrell v. Albemarle, etc., R. Co.*, 110 N. C. 215, 14 S. E. 687; *Culp v. Atchison, etc., R. Co.*, 17 Kan. 475; *Wabash R. Co. v. Speer*, 39 Ill. App. 599 (unnecessary use of whistle); *Albee v. Chappaqua Mfg. Co.*, 62 Hun, 223, 16 N. Y. Supp. 687 (same); *Gulf, etc., R. Co. v. Box*, 81 Tex. 670, 17 S. W. 375.

The author's use of the word "necessary," with which the quotation is closed, is an error of the text; it should be 'unnecessary," as shown by the context and by the authorities cited by him in support of his statement of the rule.

In *Gibson v. St. L., K. C. & N. R. Co.*, 8 Mo. App. 489, the facts stated were somewhat similar to the facts of the instant case, and the holding was that it was a jury case.

This court has stated the law in such cases as follows: "The authority to operate a railroad includes the right to make the noise incident to the movement and working of its engines, as in the escape of steam, and the rattling of cars; and also to give the usual and proper admonitions of danger, as in the sounding of whistles, and the ringing of bells. It is not liable for injuries occasioned by horses, when being driven on the highway, taking fright at noises occasioned by the lawful and reasonable exercise of these rights and duties. But, if the acts of the servants occasioning the fright are wanton and malicious, and are done in the discharge of their business by using the appliances of the company, such as wanton whistling of the engine, and the reckless discharge of steam, the company will be liable.—1 Rorer on Railroads, 704; Pierce on Railroads, 348."—*Stanton v. L. & N. R. R. Co.*, 91 Ala. 386, 8 South. 798.

Chief Justice McCLELLAN, in the case of *Ala. Gr. So. R. R. Co. v. Fulton*, 144 Ala. 332, 340, 341, 39 South. 282 2,84, says: "But the road along which he had been traveling and upon which it was his purpose to cross the railway as soon as defendant's

train, or engine got out of the way, was not a public road. Therefore defendant's trainmen were under no duty to keep a lookout for him, but their duties in respect of him arose only after they became aware of his presence and peril. If, after becoming aware that his mule was becoming frightened by the engine, or the noises being made by the operation of the engine, they failed to use every means at hand which a man of ordinary care and prudence would have had recourse to allay the fright of the animal, such as abating the noises, stopping the engine, that being practicable, etc., and injury resulted from such failure to the plaintiff, the defendant would be liable in damages in this action.—*Glass v. Mem. & Char. R. R. Co.,* 94 Ala. 581 [10 South. 215] ; *Ala. Gr. So. R. R. Co. v. Linn,* 103 Ala. 139 [15 South. 508] ; 23 Am. & Eng. Ency. Law, pages 744, 745."

"Whether there was negligence in a given case of fright must depend upon proper care vel non on the part of those in charge of the train," is the statement in *C. of Ga. Ry. Co. v. Fuller,* 164 Ala. 196, 200, 51 South. 309, 310, where the *Fulton Case* was reaffirmed. So in *Ala. C. C. & I. Co. v. Cowden,* 175 Ala. 108, 115, 56 South. 984, 987, also following the *Fulton Case.* In the opinion in the *Cowden Case* it is said: "It follows as of course that the mere want of necessity for making or allowing the noise, without more, is not negligence to liability for injury or damage resulting therefrom.—*Stanton v. L. & N. R. R. Co.,* 91 Ala. 382, 8 South. 798; *Oxford Lake Line Co. v. Stedham,* 101 Ala. 376, 13 South. 553; *Levin v. M. & C. R. R. Co.,* 109 Ala. 332, 19 South. 395; *L. & N. R. R. Co. v. Lee,* 136 Ala. 182, 33 South. 897, 96 Am. St. Rep. 24; *So. Ry. Co. v. Crawford,* 164 Ala. 178, 51 South. 340."

To the like effect was the decision in *Boan v. W. T. Smith L. Co.,* 184 Ala. 535, 63 South. 564.

Did then the agent in charge of the engine see the plaintiff and the frightened, "prancing" mule he was trying to drive or control? In *L. & N. R. R. Co. v. Calvert, as Adm'r,* 172 Ala. 597, 55 South. 812, and in *Herring v. L. & N. R. R. Co.,* 95 Ala. 422, 70 South. 744, on like evidence, it was held to be a question for the jury to decide whether the engineer did actually see the person injured, from the fact that the enginer was looking in the direction of the plaintiff along a straight track or vista, without intervening obstacles, in the daytime, and under such circumstances as that, within the line or scope or range of his vision, he could have readily seen the person or the obstacle in peril.

In the *Calvert Case,* the engineer had testified that he was looking straight up the road and could not see plaintiff's horse, which was to the side of the railroad and approaching the crossing or track.  Notwithstanding this denial, the court said:  "It is true that the engineer testified that he did not see the horse until about the time of the collision, and, if this was true, there was no subsequent negligence.  The engineer said, however, he was looking straight ahead, and it may be that his vision, if looking straight up between the rails, extended no considerable distance outside of the rails; yet it was for the jury to determine how far he could see one approaching the track before he actually got on same.

"There was proof that the right of way was clear, and it was not only a question for the jury, but is a matter of common knowledge, that if one looks a considerable distance ahead, though the eye is aimed at a certain point or object, that the sight will take in to some extent the surrounding or adjacent space, and it was open to the jury to determine that the engineer discovered the horse and buggy approaching the crossing and before the collision."

In *So. Ry. Co. v. Bush,* 122 Ala. 470, 487, 26 South. 168, 173, the court said:  "Certainly the facts that the road was straight for a long distance, the view of the track unobstructed, and the engineer was in his seat looking ahead along the track, and there was nothing to prevent him from seeing a person on the track a few hundred feet ahead, are relevant and admissible for the purpose of proving that he did see such person, and may properly be submitted to the jury on this issue; and, while no presumption arises from these facts that the engineer did see the person on the track, yet this may be inferred from these facts by the jury, whose province alone it is to decide the weight to be given to facts legally in evidence and their effect on an issue which they are admitted to prove.  A contrary conclusion was apparently reached in *Ga. Pac. Ry. Co. v. Ross,* 100 Ala. 490 [14 South. 282], solely upon the authority of the previous case of *Nave v. A. G. S. R. R. Co.,* 96 Ala. 264 [11 South. 391]."

And in *Peters v. So. Ry. Co.,* 135 Ala. 533, 540, 541, 33 South. 332, 334, the converse of this proposition is stated as follows: "When facts are admitted which conclusively establish another fact, the mere denial by a witness of the existence of the fact so established does not and should not create that material conflict

in evidence which would require a submission of the issue to the jury. In the case of *Artz v. Railroad Co.*, 34 Iowa, 154, 159, in discussing the question before us, it was there said: 'But it is urged by the appellee's counsel that plaintiff testifies that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or that, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position, is that, the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true. It constitutes, therefore, no conflict. Suppose the fact is conceded that the sun was shining bright and clear at a specified time, and a witness having good eyes should testify that at the time he looked and did not see it shine. Could this testimony be true?' "

The *Bush Case* is quoted in *L. & N. R. R. Co. v. Abernathy*, 192 Ala. 629, 69 South. 57, and it was there held that the affirmative charge was properly refused as to the subsequent negligence count. The facts there show that the boy was standing in the center of the track, when the engine, in charge of the fireman and only a short distance behind the boy, was started; that there was no obstruction on the track to prevent the fireman in charge of the engine from seeing the boy; and that the fireman was at the time looking straight ahead, down the track, toward him.

To the like effect are the cases of *Richards v. Sloss-Sheffield S. & I. Co.*, 146 Ala. 254, 258, 41 South. 288; *B. R. L. & P. Co. v. McLain*, 162 Ala. 656, 50 South. 149; *U. S. C. I. P. & F. Co. v. Granger*, 172 Ala. 555, 55 South. 244.

(6) It was a further question for the jury to say whether defendant's agent operating the said engine, if he became aware of plaintiff's immediate presence, with the prancing mule, under the circumstances of the place and of the situation, exercised due care and means not to frighten or to increase the fright of the mule.

The affirmative charge No. 2 should not have been given at defendant's request.

(7) The trial court committed no error in overruling defendant's motion to exclude the evidence of Dr. Hayes.

The hypothetical question to witness Buell was properly permitted to be answered. The plaintiff had testified that steam was coming from the cylinder cocks and the witness had ex-

[Louisville & Nashville R. R. Co. v. Jenkins.]

plained how the steam escaped through the cylinder cocks, etc., and there was evidence from which the jury might infer that the engineer in charge knew of plaintiff's presence and peril.

(9) Charge 1 was properly refused. While it stated the right of the railroad company to operate its engine in the usual manner, and with the usual noise, without liability, yet, if the peril of plaintiff was apparent to defendant's agent in charge of the engine, then he owed to plaintiff at least the duty to shut off the unnecessarily escaping steam at the cylinder cocks, to the end of allaying the fright of the mule traveling in close proximity to the railroad, and to the engine. The witness Buell stated that this could have been instantly done without interfering with the operation of the engine as it proceeded on its way.

In the *Fuller Case, supra,* 164 Ala., pages 201, 202, 51 South. 311, cited by appellant, the expression is used: "There is no evidence that unusual or unnecessary noises proceeded from it. * * * Under the circumstances, surely negligence, in respect of fright of the animal, could not, on the facts in this record, be imputed because of the engineman's effort to stop the train. Nor is there any evidence that any act or omission of the engineman contributed to the fright of the animal after her peril from that source became known (if so) to him."

The case of *L. & N. R. R. Co. v. Lee, supra,* cited by appellant, is not analogous. That case turned on the question whether the emission of steam was unnecessary, and whether plaintiff failed to discharge his burden of proof.

We find no error in the ruling of the court on the motion for a new trial.

The case is affirmed.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.